## MAUD M. SHELLEY v. THE CITY OF AUSTIN.

### No. 2687.

1. **Experts.**—When the injury relates to a matter that may be understood as well by one rational mind as by another, and without special training or experience, the testimony of experts is not admissible. See opinion for facts illustrating this rule.

2. **Cities and Towns—Streets.**—The liability of a city or town for defective streets or sidewalks is not that of a guarantor of the safety of those who use them.

They are bound to use only reasonable skill and diligence in making them safe and convenient for travel.

3. **Negligence.**—When one who is using a bridge in a city is injured by some defect in its construction, and such injury would have been avoided by the use of such care and prudence as an ordinarily prudent person would have used under like circumstances, the city is not liable in damages.

4. **Opinion of Witnesses.**—When a claim for damages against a city was based on the alleged negligence of the city in constructing a bridge which was alleged to have been dangerous for travel, and the facts relied on were such as could be understood by men of ordinary experience and without the aid of an expert, the opinions of witnesses as to the dangerous character of the bridge were properly excluded.

APPEAL from Travis. Tried below before Hon. A. S. Walker.
The opinion states the case.

*James H. Robertson,* for appellant. — 1. The court erred in refusing to permit the plaintiff to prove by the testimony of experts R. M. Hall, C. L. Pressler, and John E. Campbell that the bridge at the point where plaintiff was injured was improperly constructed, because the same was not built entirely across the street, and there was a hole left in the street at the north end of same which rendered the street crossing dangerous. 1 Whart. on Ev., secs. 444, 445, and note and authorities there cited.

2. The court erred in refusing to permit the plaintiff to prove by J. M. Thornton, J. T. Brackenridge, and other witnesses that as a fact the opening in the street where plaintiff was injured was a dangerous place, said witnesses having examined and described the place. Beaty v. Gilmore, 16 Pa. St., 463.

3. The court erred in refusing to permit the plaintiff to prove by the witnesses Thornton, Brackenridge, Jernigan, Mahoner, French, and Webb that in their opinion the opening or hole in the street where plaintiff was injured was a dangerous place, said witnesses having first described the place and its surroundings and stated the facts upon which such opinion was based. M. P. Ry. v. Jarrard, 65 Texas, 560; Beaty v. Gilmore, 16 Pa. St., 463; Indianapolis v. Huffen, 30 Ind., 235; 1 Whart. on Ev., 511–14, and note and authorities cited.

4. The court erred in refusing to permit the plaintiff to prove by J. M. Thornton that previous to the date of the injury to plaintiff that he had fallen into the same hole where the plaintiff was injured and was thereby seriously injured, and of all of which the defendant had actual notice and had not since repaired said place. T. & P. Ry. v. De Milley, 60 Texas, 194.

5. The court erred in charging the jury " that if they find the bridge was reasonably safe and sufficient for the public, then you will find for the defendant," because the issues presented were:

(1) Had the defendant rendered the street crossing dangerous by con-

structing the bridge a width less than the traveled portion of the street, and thus leaving an uncovered hole in the street?

(2) Was it negligence in the defendant to so construct the bridges as to leave an uncovered opening rendering the street crossing less safe than it would have been without said bridges?

6. The court erred in not defining to the jury in the charge the degree of care required of plaintiff, she being a child of only eighteen years of age, and in not giving the correct legal definition of ordinary care as applied to the plaintiff, but in telling the jury to find whether she took proper care of herself for her safety. The plaintiff was eighteen years old July, 1887. She had only ridden occasionally. The court in the charge to the jury applied to her the rule of law that would govern adults. The court did not explain to the jury the rules applicable to children. Evansich v. G. C. & S. F. Ry., 57 Texas, 126.

7. The pleadings and evidence presented the issue, was the street crossing rendered unsafe by the defendant constructing the two bridges so as to make the hole in the street? Therefore, it was the duty of the court, whether asked or not, to submit to the jury in the charge this question. The trial court not only ignores and failed to submit this issue, but presented to the jury an issue not raised by the pleadings and evidence, and one which plaintiff had admitted was not in the case, viz., was the bridge safe and sufficient? It is impossible for this court to say that plaintiff's case was not injured by this charge. The court in giving the bill of exceptions says there was no question in the case as to the safety of the bridge so far as it extended, the question being the hole at the end of the bridge, which the court failed to submit to the jury. This is believed to be reversible error.

*Maxey & Fisher,* for appellee. — 1. Plaintiff complains that the exclusion of the testimony of Hall, Campbell, and others was erroneous. The record discloses all facts necessary to enable the jury to deduce their own conclusions as to the dangerous or safe character of the bridge and that portion of the Avenue gutter into which plaintiff's horse fell, and the court was, therefore, right in rejecting the mere conclusions and opinions of witnesses as to safe or unsafe condition of the bridge and gutter. Coal Co. v. Conlan, 6 Am. and Eng. Ry. Cases, 250, 251; Railway v. Moranda, 17 Id., 567; Lawson v. Railway, 21 Am. and Eng. Ry. Cases, 255; Couch v. Railway, 28 Am. and Eng. Ry. Cases, 334; Largan v. Railway, 40 Cal., 274; 1 Whart. on Ev., 2 ed., secs. 509, 511.

2. The plaintiff in her petition complains that the construction of the wooden bridge was improper and defective in that it did not extend north far enough to cover the entire width of Pecan Street, and hence there was a dangerous "hole" left between it and the iron foot bridge.

Evidence of a fall, therefore, of Thornton from the iron bridge was inadmissible and was rightly rejected.

3. The charge of the court clearly presented to the jury the issues in the case. But if it was not as full and complete as it should have been it was the duty of plaintiff to request additional instructions, failing to do which she will not be heard to complain. Endick v. Endick, 61 Texas, 560; Ins. Co. v. Ende, 65 Texas, 124; Oil Co. v. Malin, 60 Texas, 649; T. & P. Ry. v. Casey, 52 Texas, 124.

COLLARD, JUDGE.—It is insisted in appellant's brief that expert testimony was admissible to prove that the bridge at the point where plaintiff was injured was improperly constructed because it was not built entirely across the street, which left a hole in the street at the north end of the bridge, rendering the crossing dangerous.

It was admitted by plaintiff on the trial that the two bridges were constructed in a good and workmanlike manner, and of good sound material, and it was also admitted that the issue in the case was, "was the street crossing rendered unsafe by leaving the opening between the two bridges?" One of the bridges was the carriage way across the gutter across Pecan Street where it entered Congress Avenue from the west; the other was a foot bridge near the north end of the wood bridge, leading from the Avenue on to the pavement. The wooden bridge or wagon way was so constructed that it lacked nearly three feet of reaching the foot bridge, which left at the north and south ends of the wagon way an open space between the bridges over the gutter, which was two feet three inches deep in the centre. It was at the north end of the crossing where plaintiff was hurt by her horse falling backwards into the space between the two bridges. It occurred as follows:

Four couples of young people were taking a pleasure ride in the city of Austin about 8:30 p. m. For some purpose they intended to form a line on this wooden bridge. The first two couples rode onto the crossing, the plaintiff being on the outside next to the north end of the crossing at the open space between it and the foot bridge. They halted or were moving slowly to allow the two other couples who were behind to ride up and form in a line on the right. During this maneuver, and while the plaintiff's horse was only moving very slowly if at all, his hind feet missed the end of the bridge and he fell backwards. From some statements in the testimony it might be inferred that plaintiff's horse was backing, or that he was jerked by plaintiff, causing him to back or step out of line at the time he fell. His hind feet went in first.

The rule as to the admissibility of expert testimony is not subtle or hard to understand, but it is sometimes difficult to draw the line and say where it should stop. It has been said that it is admitted on the ground of necessity. In the investigation of a subject where special knowledge

or skill is required to deduce from the facts a reliable opinion, and where the ordinary juror would not be presumed to understand the subject or be competent to form a correct conclusion from a given state of facts, then of necessity the jury must be instructed by persons possessing the requisite special information; but when the inquiry is about a matter that may be understood by one man of sense as well as another—where no special course of study or training is required to understand it—opinions of experts are rejected.

In such cases the facts must be stated and the jury allowed to draw their own conclusions. For instance, as to mechanical experts, where a horse escaped and passed over a cattle guard on a railroad and was killed by a moving train, it was held error to allow an expert to testify that the guard was properly constructed. The description of the guard floor was enough to enable the jury to say whether cattle could pass over it. Lawson on Expert and Opinion Ev., pp. 94, 95. Where a bridge, consisting of several spans, one of which fell while the plaintiff was crossing it, it was held error to permit experts to testify that "it was caused by the water and ice raising the bents, whereby the stringers were displaced." The court said: "They (the jury) required no opinion of experts to enable them to determine whether water and ice, under given conditions, would or would not raise the bents of the bridge." Hughs v. Muscatine County, 44 Ia., 676.

In Railway Company v. Conroy, 68 Ill., 564, it was held that the opinion of experts was of no value when other witnesses had testified as to the facts themselves that caused the bridge to give way, the cause being rotten timber and supports. Stolp v. Blair, 68 Ill., 541.

In the case at bar the facts are simple. There is no defect in either of the bridges as structures. It is said on the one hand that the space between the bridges is dangerous to travel—that the wood bridge should have been constructed to the foot bridge and so covered the opening; it was contended on the other that the bridge was long enough for travel when used as it should have been and was intended to be. The dimensions of the bridge are given, fifty-four feet long, the width of the open space, depth of gutter, and all the physical facts necessary to a complete understanding of the question, together with the circumstances attending the accident itself; and this being so we are unable to see any necessity for calling in a scientific person to explain or decide any matter at issue. There is no question of science, art, or professor's skill involved. Only a simple question, the facts of which are open to the sense and observation of common men and about which a juryman of ordinary intelligence would be as competent to judge as the best engineer or mechanic. There is no question about whether the bridge be weak, sufficiently supported, or safe as a bridge; but the simple question is, should it have been built longer, and is it a dangerous crossing? We think the court

correctly ruled that experts were not needed to aid the court or jury in determining the question. We think the court ruled correctly in excluding the opinions of the other persons not experts, who knew the place, had examined it, and were able to state the facts upon which their opinions were based as to whether the crossing was dangerous.

In an action against a turnpike company for injuries caused by falling into an excavation on its road, opinions of persons not adepts as to whether the hole was dangerous were held inadmissible. Stillwater v. Turnpike Co., 26 Ohio St., 521. The court said: "Whether that place in the road was dangerous was a question for the jury and not for witnesses. It was not a question of science or art, nor was it one where the jury could not be put in possession of all the *facts* necessary to its decision."

In the case of The City of Parsons v. Lindsay, 26 Kansas, 430, the plaintiff while crossing a street in the city about midnight stepped from a street crossing into a gutter and was injured. "The crossing had formerly extended over the gutter, making the surface of the sidewalk and gutter continuous; but several weeks before the accident an abutting lot owner had cut off the planks composing the crossing for the purpose of putting in stone curbing and guttering, and after putting them in left the gutter uncovered." Opinions of witnesses cognizant of the facts were admitted by the trial court. The Supreme Court on review stated the general rule that opinions of witnesses are not competent, "although such opinions may be derived from personal observation and are sought to be given in evidence in connection with the facts on which they are based." The court proceeds to note the exceptions, as where experts are allowed to testify whether cognizant of the facts or not, and other exceptions where from the nature of the inquiry the facts can not well be put before a jury without involving an opinion. The court then proceeds: "The present case, however, does not come within any of the exceptions, but within the general rule;" and concludes that "all the circumstances should have been given to the jury, and then the question whether the crossing was safe or unsafe should have been left to the jury." See also Kelly v. Town, 31 Wis., 179; Tuttle v. City, 119 Mass., 276; Oleson v. Tolford, 37 Wis., 330.

The court below we think correctly refused to permit plaintiff to prove by J. M. Thornton that previous to the date of the injury to plaintiff he had fallen into the same hole where plaintiff was injured; that the city had notice of the fact and had not repaired the place. Thornton fell from the foot bridge, and the evidence was objected to on this ground. Such evidence would not tend to show that the wood bridge was unsafe for travel on horseback.

Appellant assigns as error the following extract of the court's charge: "If they (the jury) find that the bridge was reasonably safe and sufficient

for the public, then they will find for the defendant." Appellant says this is error, because the issues were:

"1. Had the defendant rendered the street crossing dangerous by constructing a bridge of a width less than the traveled portion of the street, thus leaving an uncovered hole in the street?

"2. Was it negligence in defendant to so construct the bridges as to leave said uncovered opening, rendering the street crossing less safe than it would have been without the bridge?"

The whole paragraph of the charge from which the above extract is taken is as follows:

"From the testimony the jury will determine whether the city authorities used that care and skill which a prudent man would ordinarily use in like circumstances in making and keeping the bridge as shown to have been on July 30, 1887, with the surrounding facts; and if they find such care and prudence to have been taken and used in keeping said bridge in the dimensions shown, looking to all the circumstances—that is, if they find that the bridge was reasonably safe and sufficient for the public—then they will find for the defendant."

The jury were then instructed that if the city failed to exercise such care, etc., to find for plaintiff. We see from the foregoing that the charge of the court, taken in its proper connection, is not obnoxious to the criticism contained in the assignment of error. By a fair construction it did submit to the jury the issue contended for by appellant as to whether the bridge was of sufficient *dimensions* to relieve the city of negligence in its construction and keeping. If the jury had concluded that the bridge was too short, or that the uncovered opening rendered the crossing unsafe, or that the bridge was not reasonably sufficient for public travel, they would have so found under the charge. If the charge was not full enough it was the plaintiff's privilege to make it complete by special charges.

The next complaint of appellant is that the court in its charge ignored the question of negligence of defendant in making the uncovered opening in the street, and in charging that "if the bridge was reasonably safe and sufficient," etc. We are unable to see that the question of negligence was ignored in the charge. It directed the jury to find for the defendant if they should believe from the evidence that it had exercised the care that a prudent man would exercise in like circumstances, and then submitted the converse of the proposition, which was in effect to submit the question of negligence or not of the corporation. The court laid down the correct rule as to the duty of the city that the bridge must be reasonably safe and sufficient for public use. It is said by a text writer upon this subject that "the liability is not that of a guarantor of the safety of the traveler. The corporate authorities are only bound to use reasonable skill and diligence in making the streets and sidewalks safe and conveni-

ent for travel. It is under no obligation to provide for everything that *may* happen upon them, but only for such things as ordinarily exist, or such as may be reasonably expected to occur." Dill. on Mun. Corp., sec. 1015.

And again he says, "it (the street) must be made reasonably safe for use; but this does not necessarily imply as a matter of law that the *whole width* of the street must be in good condition. Whether the street was wide enough to be safe, whether it was in reasonably safe condition for public use by travelers who use ordinary care to avoid injury, are almost always questions for the jury." Id., 1016.

In authorities cited, and also section 1019, where the doctrine that the streets, sidewalks, and bridges are required "to be in only reasonably safe condition for travel in the ordinary modes" is emphasized, these quotations we think correctly enunciate the law.

Appellant complains that the court erred in not defining the degree of care required of plaintiff, she being only eighteen years of age, and in not giving the correct legal definition of ordinary care as applied to her.

The court instructed the jury that "if plaintiff was wanting in the use of such care and prudence as an ordinarily prudent person in like circumstances would use to avoid the injury, and that but for her own want of such care the injury would not have happened," she could not recover. The charge was correct as applicable to ordinary persons, and we can see no reason why it should not apply to the plaintiff.

There was evidence supporting the verdict of the jury, the court submitted the law applicable to the case as we understand it, and we do not feel authorized to set the verdict aside.

We conclude the judgment of the court below should be affirmed.

*Affirmed.*

Adopted October 29, 1889.