LUCY BOND ET AL. V. INTERNATIONAL & GREAT NORTHERN RAILROAD
COMPANY.

Decided April 7, 1909.

**1.—Evidence—Conclusions.**

A nonexpert witness ought to state facts and leave all conclusions or inferences to the jury, where the jury are as capable of forming a conclusion as the witness. But where a conclusion is stated and the facts upon which the witness bases the conclusion appear, it is not ordinarily an error which should reverse the judgment.

**2.—Same—Case Stated.**

Where the engineer of the train that struck and killed deceased testified that he saw the latter walking along the path on the side of the track where he was in no danger, and that the engine came right close to him before he stepped upon the track, and that when the train stopped witness went back to where deceased was lying, and then testified further that he saw deceased's tracks and they led up to the railway track as far as the point where he was struck, the admission of the latter statement over the objection that it was a conclusion of the witness that the tracks were deceased's, was not reversible error, it appearing from other evidence that a distinction between deceased's tracks and those of others was not involved, and that other witnesses referred to the tracks as those of deceased without objection.

**3.—New Trial—Newly Discovered Evidence.**

A new trial for newly discovered evidence of a witness was properly refused where it appeared that he gave an affidavit to the opposite party which, in connection with an undisputed fact in the case, rendered his supporting affidavit of no probable importance.

**4.—Same—Insufficient Motion.**

A new trial for newly discovered evidence was properly refused when it was not stated in the motion that the testimony of the witness was unknown, but only that his whereabouts was unknown until the day before trial, and there was no effort to continue or postpone.

**5.—Same—Degree of Diligence.**

A motion for new trial based upon the newly discovered evidence of a witness to prove a certain fact, stating that up to the time of securing the supporting affidavit the party seeking the new trial could not discover who had the information though he used diligence, but failing to state what was done in the exercise of diligence, was properly refused.

**6.—Same—Absence of Witness.**

A new trial for newly discovered evidence will be denied when it appears that such evidence is as to facts which are not within the exclusive knowledge of the desired witness, but said facts, if true, were such as any one of numerous persons familiar with conditions that existed at the time and place, could have testified to.

**7.—Same—Surprise.**

Where the plaintiff alleged that the deceased was and had been for a long distance, walking on the path inside the rails, and defendant denied this and alleged that he stepped upon the track before the engine, and this formed the issue, proof by defendant that there were no tracks between the rails, did not entitle plaintiff to a new trial on the ground of surprise.

**8.—Same—Practice.**

To entitle one to a new trial on the ground of surprise on account of evidence on the trial, it is necessary for him to ask a postponement or continuance in order to enable him to properly overcome the surprise. He cannot take the chance of a verdict and then ask for a new trial.

Appeal from the District Court of Houston County. Tried below before Hon. Benj. H. Gardner.

*Hayne Nelms* and *Nunn & Nunn,* for appellants.

*King & Morris,* for appellee.

JAMES, Chief Justice.—Appellants were the widow and children of E. B. Bond, and sued for damages resulting from the striking and killing of Mr. Bond by one of defendant's engines while he was walking (as the petition alleges) on the track between the rails going from the town of Lovelady to a saw mill where he was employed. If necessary, in the course of this opinion, we shall state more of the petition.

Besides a general denial, defendant alleged that the accident was caused by the negligence of deceased in stepping upon the track in front of the moving train and so close thereto that it was impossible to escape striking him. This seems to be a sufficient statement from the answer. There was a verdict for the defendant.

The first assignment is that the great preponderance of the evidence showed that Bond was walking in the middle of the track for a long distance in plain and open view of the engineer and other operatives on the train; that the stock or danger alarm was sounded two or three hundred yards before he was struck; that the engineer admits that he saw him at a distance of some 250 yards (though he said he was not on the track); that there was no sign or indication on his part that he heard the signals and would leave the track, and that those on the train had the means at hand and could have slowed down and avoided the injury without endangering the train.

That there was testimony which would have supported the above is not disputed, but we can not agree with appellants that the evidence did not properly admit of the jury finding the contrary, and finding that deceased was at no time inside the track, but was walking in a path which ran along the west side of the track and out of danger

until just before he was struck, when he stepped upon the track in the way of the engine.

The second assignment of error complains of certain testimony of the engineer Rothenberg. This witness testified that he noticed a man (who proved to be Bond) walking on the left side of the track in a path about 250 yards ahead of him; that if he had continued walking where he was he would have been in no danger; that the engine was running 15 or 18 miles an hour, and came right close to him before he stepped upon the track; that witness did not know he was going to step on the track until he did so. The witness proceeded: "As soon as the train stopped I left the engine in charge of the fireman and went back to where the man was lying. He lived only a few minutes. I saw his tracks where he made a step or two to the end of the tie and then across the rail towards the center of the track where he was struck." Counsel saved a bill of exceptions to the last statement because "it is the opinion of the witness about a matter of which he has not shown that he has any knowledge. He does not show that he knew the foot-prints of Mr. Bond. A further objection is that it is not in response to the interrogatory, is irrelevant and incompetent."

The third assignment complains of like testimony of the head brakeman, Furguson, who was in the engine cab. This witness testified substantially as did the engineer, and the portion of his evidence assigned as error, and for the same reasons, is the following: "The engine slowed on down and when it got slow enough I jumped off the engine on the left-hand side and ran back to where the man was lying. He did not live but a few moments after I got to him. I saw the footprints he made along the side of the track and then one or two on the ends of the ties and a step or two inside of the rails just before he was hit by the engine."

The brief does not appear to deal with the objection that the above testimony was not responsive to the interrogatory. And it does not appear that any such objection, which was to depositions, was made at the proper time.

These witnesses say they saw Bond walking in this pathway and saw him step from it upon the track just before he was struck. They saw tracks in the pathway (which all the evidence shows were the tracks of one person) and saw that they led up to the track as far as the point where he was struck. The objection is that they referred to these tracks as being Bond's.

We recognize that a nonexpert witness ought to state facts, and leave all conclusions or inferences to the jury where the jury are as capable of forming a conclusion as the witness. But where a conclusion is stated, and the facts upon which the witness bases the conclusion appear it is not ordinarily an error which should reverse the judgment. Our decisions have gone quite far in this direction. Texas & Pac. Ry. v. Warner, 42 Texas Civ. App., 286, and cases there cited. There was no question as to there being a variety of tracks in the pathway and the testimony of these witnesses can not be said to involve a question of distinction between Bond's tracks and the tracks of others. It must have been plain to the jury that their reference

to this line of tracks as Bond's was based upon facts testified to by them, viz.; that they saw him in the act of walking along there, saw him step up, and the tracks, where he went and where they terminated, correspond with what they had seen, and not upon any knowledge of his footprints. Their conclusion was not any stronger than the facts they testified to and depended upon the existence of the facts. It is inconceivable, under these circumstances, that the jury would have adopted the conclusion, unless they found as true the facts testified to by these witnesses. The main issue was whether Bond was walking in the path between the rails, or in the path alongside the track. If the jury believed the testimony which went to show that he was walking inside the rails, the conclusion in question would necessarily have had no effect. If they did not find this, and found that he was walking in the pathway, then the verdict was necessarily right.

More especially do we think the testimony ought not to cause a reversal of the judgment, when other witnesses no better qualified to speak of the tracks as those of Bond were allowed, without objection, to refer to them as his. (San Antonio v. Potter, 31 Texas Civ. App., 263; Galveston, H. & S. A. Ry. v. Baumgarten, 31 Texas Civ. App., 253.)

The sixth and subsequent assignments complain of the refusal to grant a new trial for newly discovered evidence. To the motion an affidavit of Ellis was attached, whose testimony was claimed to be newly discovered. He, however, gave appellee a counter affidavit which so qualified the first as to leave it of no probable importance on another trial when taken with the fact that practically all the witnesses on the trial testified that the accident happened soon after a rain. The court had the right to conclude that the testimony of the proposed new witness would not have affected the result. Furthermore, the excuse given for not sooner having discovered the fact that Ellis was at the place immediately after the accident occurred, and what his testimony would consist of and its importance to the issue, was incredible and also was negatived by certain testimony that appears in the statement of facts.

Another newly discovered witness was J. W. Norton, according to the seventh assignment. The motion fails to state a good ground for a new trial on account of this witness. It shows that he was foreman of the Lovelady Station when this accident occurred. It does not state that plaintiffs did not know of his testimony. What it states is that Norton "is not now in the employ of defendant and that plaintiffs did not locate his present whereabouts until the day before the trial, and as soon as he was located plaintiffs used every means within their power to secure his attendance as a witness, but failed." The motion fails to show how long Norton remained at Lovelady in defendant's employ, fails to show that plaintiff did not know of his testimony all along. His deposition might have been secured. In addition to this they admitted they knew of his importance as a witness some time before the trial and located him the day before the trial, and yet were content to go to trial without any further effort, by postponement, to secure his testimony.

There is another effort in the motion to obtain a new trial for the testimony of Mr. Norton, and this is the subject of the ninth assignment. It was set forth by the affidavit of Norton that he had seen the foot tracks on the west side of the tracks where some one had been walking. The tracks were made on the sand which was slightly damp on top from a slight shower, and at each step the sand was picked up. That he saw the print of a foot on the end of a tie leaving fresh sand around the shoe, and that he took out his knife and cut the size and shape of the shoe in the tie. The motion states that since securing this affidavit plaintiffs have caused shoes to be fitted to said impression and that it does not correspond with such a shoe as Bond wore. A sufficient reason for overruling this ground of the motion is the fact that it does not show what diligence was used to ascertain who made the cut in the tie. The motion states "that up to the time of securing the affidavit of J. W. Norton the plaintiffs could not find out or discover who made or cut the track in the tie, though they exercised diligence to do so." What was done in the exercise of diligence to find it out was not stated in order that the court might consider whether or not it was sufficient. We need not mention in this connection a counter affidavit which went to show that Norton did not make the cut in the tie until after the footprint had been obliterated. As has been stated, Norton was the section foreman at Lovelady and it is hardly credible that any real and sustained search for the person who had cut the impression would have been conducted without inquiry of the foreman who was Norton himself.

The eighth assignment deals with newly discovered testimony of J. M. May. If the motion shows any diligence in this matter, or any excuse for not sooner discovering this witness and his testimony, we fail to find it. In view of the probability that if any examination into the case was made in the neighborhood as appears was made by plaintiffs at or about the time any reasonably careful investigation would have revealed this witness and his testimony, appellants, perhaps, did not undertake to state the diligence and what it consisted of. Besides, the subject matter of the proposed testimony of May was something not within his exclusive knowledge, but consisted of facts which, if true, anybody familiar with conditions that existed at the time and place, and such persons appeared to be numerous, could have testified to.

The tenth assignment, which relates to Ed Halsell, another newly discovered witness, is overruled, as the motion fails to show excuse for not knowing of the witness sooner. The same is true of the witnesses Cochrane and Turner mentioned in the eleventh.

The twelfth assignment is also overruled. It was set up in the motion for new trial as one of the grounds, that plaintiffs had no notice that defendant would attempt to prove that there were no footprints on the pathway between the rails, until testimony was adduced upon the trial; on the contrary, defendant's testimony by depositions was silent about the central pathway and only referred to footprints on the west side of the track, and from the fact that hundreds of pedestrians daily walked up and down said central path-

way plaintiffs were led to believe that no attempt would be made to prove that there were no tracks there; that after discovering the trend of such testimony plaintiffs questioned witnesses present and made every reasonable and diligent attempt to find witnesses who knew about the hard track pavement inside the rails and that on that account a pedestrian would not make a track there. The petition alleged that deceased was, and had been for a long distance, walking on the path inside the rails. Defendant denied this and alleged that he stepped upon the track before the engine. This formed the issue. In the preparation of plaintiffs' case for trial it seems to us that anyone would realize the importance of thoroughly investigating the matter of footprints. Plaintiffs admit that they knew defendant would seek to show tracks in the side path. It should naturally have occurred to plaintiffs the importance of showing his footprints, or the absence thereof, along the center of the track, and if none could have been made there by him on account of the nature of the ground, to show such fact. We can not understand how plaintiffs could reasonably have been led by defendants to rest assured that defendant would go no further with its proof than to show footsteps outside of the track, and to consider the question of tracks inside the rails as unimportant.

The true nature of this ground for a new trial is surprise. If we should call the introduction of testimony pertinent to the issue, a proper subject of surprise to plaintiffs, then before plaintiffs would be allowed a new trial upon that ground it was necessary that they should have asked to be allowed to withdraw their announcement of ready, to continue or postpone the trial in order to enable them to properly overcome the surprise. Instead of pursuing this course they were satisfied with what they had conveniently at hand, to go on with the trial and take their chances on a favorable verdict, notwithstanding. The ground did not entitle them to a new trial. (De Hoyes v. Galveston, H. & S. A. Ry. Co., 52 Texas Civ. App., 543.)

Judgment affirmed.

*Affirmed.*

Writ of error refused.