KANSAS CITY SOUTHERN RY. CO. v. CARTER. (No. 1248.)

(Court of Civil Appeals of Texas. Texarkana. Feb. 27, 1914. · On Motion for Rehearing, April 9, 1914.)

1. APPEAL AND ERROR (§ 966*)—DISCRETION OF COURT—CONTINUANCE—ABSENCE OF WITNESS.

An application for a continuance because of the absence of a witness, who was a nonresident of the state, was not a statutory application under Rev. St. 1911, art. 1918, providing for continuances where testimony cannot be procured from any other source, and article 3649, allowing the taking of depositions, and there-

fore the discretion of the court will not be disturbed in the absence of abuse.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3837; Dec. Dig. § 966.*]

2. APPEAL AND ERROR (§ 1043*)—REVIEW—HARMLESS ERROR—CONTINUANCES.

If the court abused its discretion in refusing a nonstatutory application for a continuance, it was not ground for reversal, where the application was based on the absence of a witness, who testified fully on a former trial, which testimony was admitted by agreement and was to the same effect that the application stated he would testify.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4115–4121; Dec. Dig. § 1043.*]

3. MASTER AND SERVANT (§ 145*)—INJURIES TO SERVANT—CONTRIBUTORY NEGLIGENCE—RULES—CONSTRUCTION.

A rule of a railroad that, "where there are no car inspectors, the conductors must, with the assistance of the trainmen," inspect the cars and see that the doors are closed, imposed on the conductor alone the duty of initiating an inspection, and a brakeman who was injured by an open door had no other duty than to assist the conductor when he initiated an inspection.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 288; Dec. Dig. § 145.*]

4. EVIDENCE (§ 507*)—OPINION EVIDENCE—SUBJECTS OF EXPERT TESTIMONY—CAR DOOR FASTENER.

The testimony of a brakeman that a car door came open because part of the lever used in fastening it had broken off, based on an inspection following an accident resulting from its being open, was a mere opinion upon a matter of which one man could judge as well as another, and did not call for the opinion of an expert.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2310; Dec. Dig. § 507.*]

5. APPEAL AND ERROR (§ 1048*)—REVIEW—HARMLESS ERROR—ADMISSION OF EVIDENCE.

While an answer to an interrogatory not calling for expert opinion should be stricken on motion if the answers to cross-interrogatories show it to have been based on opinion and not knowledge, where the facts on which such opinion was based were brought out on oral cross-examination at the trial, any error in overruling a motion to strike the answer was harmless.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4140–4145, 4151, 4158–4160; Dec. Dig. § 1048.*]

6. MASTER AND SERVANT (§§ 276, 278*)—INJURIES TO SERVANT—ACTIONS—SUFFICIENCY OF EVIDENCE.

Evidence, in an action by a brakeman against a railroad company for injuries by being struck by an open car door, held sufficient to support findings that the door struck plaintiff as he claimed, that the fastenings on the door were so defective as to make it probable it would come open, that such defects were due to the railroad's negligence, and that the door was closed shortly before the accident.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 950–952, 954, 956–972, 976, 977; Dec. Dig. §§ 276, 278.*]

7. APPEAL AND ERROR (§ 837*)—REVIEW—SCOPE AND EXTENT—EVIDENCE TO BE CONSIDERED.

Opinion evidence on a subject not requiring expert testimony, the admission of which was held harmless, could not be considered by the appellate court in passing on the sufficiency of the evidence.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3262–3272, 3274–3277, 3289; Dec. Dig. § 837.*]

On Motion for Rehearing.

8. EVIDENCE (§ 595*)—PERSONAL INJURIES—ACCIDENTS—SUFFICIENCY OF EVIDENCE—INFERENCES FROM EVIDENCE.

Where it could be equally inferred that a car door which struck a brakeman came open because of a defective latch or because it had not been fastened, the jury could not choose the inference that it was because of the defective latch, as an inference of negligence cannot be adopted unless it is more reasonable than the inference of its absence.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2444, 2445; Dec. Dig. § 595.*]

9. MASTER AND SERVANT (§ 286*)—INJURIES TO SERVANT—ACTIONS—QUESTIONS FOR JURY.

It could not be said as a matter of law that, if a railroad was not negligent in failing to inspect and repair a defective car door, which came open and struck a brakeman, it was negligent in failing to use due care to close and fasten the door when the train started on its trip.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1008, 1010–1015, 1017–1033, 1036–1042, 1044, 1046–1050; Dec. Dig. § 286.*]

10. MASTER AND SERVANT (§ 276*)—INJURIES TO SERVANT—ACTIONS—SUFFICIENCY OF EVIDENCE.

Evidence, in an action by a brakeman for injuries resulting from being struck by an open car door, held insufficient to show that the door came open because of negligence on the part of the railroad.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 950–952, 954, 959, 970, 976; Dec. Dig. § 276.*]

Appeal from District Court, Bowie County; H. F. O'Neal, Judge.

Action by C. W. Carter against the Kansas City Southern Railway Company for damages for personal injuries. From a judgment for plaintiff, the defendant appeals. Reversed and remanded for new trial.

See, also, 155 S. W. 638.

Glass, Estes, King & Burford, of Texarkana, for appellant. Wolfe, Wood & Haven, of Sherman, for appellee.

WILLSON, C. J. This is the second time this cause has been before us. The first appeal was by appellee from a judgment in favor of appellant on a verdict rendered by the jury in obedience to a peremptory instruction of the court. That judgment having been reversed by this court, the cause was tried again at the May term of the district court of Bowie county; the trial resulting in a judgment in appellee's favor for the sum of $15,000. On the last trial the testimony as to the accident and the cause of same, resulting in the injury to appellee, was not materially different from that heard on the first trial, except in the respect hereinafter shown, in connection with ruling made by this court in disposing of assignments complaining of the action of the trial court in overruling a motion made by appellant to strike out the answer of the witness John Bres to the twelfth direct interrogatory propounded to him. The full statement made in the opinion disposing of the first appeal,

which will be found reported in 155 S. W. 638, renders it unnecessary to here make a statement of the case further than to say that it sufficiently appeared from the testimony that as a result of the accident appellee suffered such injury to his neck and back as to produce in him a serious case of paralysis; and it is not contended, if appellee was entitled to recover at all, that the sum found in his favor is excessive.

It is insisted that the court · erred ..when he overruled appellant's application for a continuance, based on the absence from the court of its witness Dr. T. F. Kittrell, the physician who first saw appellee after he was injured. It appeared from the application that appellant expected to prove by the witness that he saw appellee within a few hours after he was injured, and made a careful examination of his person, and "found no fracture or dislocated vertebra, and no other physical injuries except slight bruises"; and further expected to prove by him that he saw and treated appellee during the two weeks following the time when he was injured, and "made numerous examinations of him," and at the May term, 1912, of the district court of Bowie county again examined appellee, "and again found no evidence of any physical injury or other condition that could be attributed to physical injury or traumatism." It appeared from the application that the witness had attended the court and testified at a former trial of the cause, and several times during the two weeks preceding the time when the application was presented had promised appellant's attorneys to be present when the cause was reached for trial. It further appeared that said attorneys relied upon the promise of the witness, and did not know until the day before the application was presented to the court that the witness would not be present as he had promised to be. It further appeared from the application that the witness was not present because of illness of a member of his family, which he regarded as demanding his presence at his home. It further appeared that while the witness practiced his profession in both Texarkana, Tex., and Texarkana, Ark., he resided and maintained an office in the latter state. It appears from a qualification made by the court to the bill of exceptions presenting appellant's complaint based on the action of the court in overruling the application that he overruled it because it did not appear therefrom that appellant had used the diligence required of it by law to procure the testimony of the witness. It further appears from said qualification of the bill that the testimony of said witness given at the former trial of the cause was, by agreement, "introduced as evidence on this trial."

[1, 2] The witness not being a resident of the county where the trial was had, but instead being a nonresident of the state, it is clear the application was not a statutory one.

Articles 3649 and 1918, R. S. 1911. Therefore, before we should undertake to revise the trial court's action and declare it to have been erroneous, it should appear that he abused the discretion he was entitled to exercise in the matter. Carver Bros. v. Merrett, 155 S. W. 635. If, however, we thought —and we do not—that the court abused the discretion he had about the matter, we would not for that reason reverse the judgment, in the face of the fact that it appears from the statement of facts that the testimony of the witness given on the former trial was introduced as evidence and was before the court and jury for consideration by them. On the former trial the witness seems to have testified fully. His testimony on that trial, as introduced at the last trial, covers more than 16 pages of the typewritten matter in the statement of facts, and is to the effect the application indicated it would have been had he been present and testified again at the last trial. The assignment is overruled.

[3] On the last, as on the first, trial of the case, appellant offered in evidence one of its rules, as follows: "Where there are no car inspectors, conductors must, with the assistance of the trainmen, thoroughly inspect all cars offered, and be sure of their safe condition before taking them. They must see that side doors of empty cars are closed and securely fastened." It appeared that appellant did not have a car inspector at Myrtis, where the car in question was being switched for the purpose of making it a part of the train. With reference to this rule this court, on the former appeal, held that if the testimony presented a question as to its violation by appellee it was one of contributory negligence on his part, and not one of assumed risk. The correctness of that conclusion is strongly combatted in support of assignments complaining of the action of the court below, on the last trial, in refusing to give to the jury certain special charges requested by appellant whereby it sought to have issues as to assumed risk based on a violation by appellee, as asserted, of said rule, submitted to the jury. We have not thought it necessary to again consider the question for the purpose of determining whether the conclusion then reached was correct or not, because, if we should conclude we were wrong, and if it did not appear that the rule had been abrogated, on another ground, not set forth in the opinion on the first appeal, we nevertheless would feel bound to hold that the court below did not err when he refused the special charges. We are of the opinion that the effect of the rule was to impose on the conductor alone an absolute duty to inspect cars and see that the side doors of empty cars were closed and fastened before taking them, and on appellee only the duty to assist him when called upon to do so. The language of the rule is that "conductors must, with the assistance of the trainmen,"

etc. If the purpose had been to impose the duty of inspection, etc., on the conductor and trainmen alike, the language doubtless would have been: "conductors and trainmen must," etc. In other words, we think the rule imposed on the conductor alone the duty of initiating an inspection, and on the trainmen no other duty than to assist him when he initiated it. Therefore we overrule the seventh, eighth, ninth, twelfth, and twenty-fifth assignments. On the same ground we overrule the tenth, eleventh, thirteenth, and twenty-fourth assignments, based on the refusal of the court to give to the jury certain special charges requested submitting to the jury issues as to contributory negligence on the part of appellee in violating the rule in question.

John Bres was "swing" brakeman on appellant's local freight train to Shreveport, in which the defective car was carried to Myrtis on the day before the accident occurred, and on the same train on its return trip the next day, when said car was again made a part of it. He had been a brakeman on that train during the two years immediately preceding the accident. At the instance of appellee his deposition as a witness was taken March 4, 1912. In reply to the eleventh direct interrogatory he testified: "Just an instant before the door struck Carter, I saw the same standing open for the first time. * * * I did not see the car door fly open, as I was facing the engineer, until after the engine passed over north passing track switch, and when I turned around the car was going in on passing track, and I saw one of the east doors standing open just before Carter was struck by said door. All I could say is that the door was right at Carter when I first saw it open; that is, he was struck by the door almost as soon as I saw it standing open." The twelfth direct interrogatory propounded to the witness was as follows: "If you have stated in your preceding answers that said car door was open, can you state what caused the same to come open? If so, please do so." The witness answered as follows: "This car door came open on account of the car door being in bad order, due to the lower or bottom part of the lever with which a refrigerator car door is fastened being broken off." Before this answer was read to the court and jury, appellant objected to it on the ground that it appeared from the deposition of the witness "that he had not been in a position where he could see the car door," and on the further ground that the answer "was an opinion and conclusion." The objection was overruled. Afterwards, the witness Bres, being present in court, was called by appellant and testified as a witness for it. It appeared that at the time the accident occurred the witness was riding on the pilot of the engine as it moved on the main track towards the station. He testified that when the engine passed the switch appellee was at same prepared to throw it so the car following the engine would take the passing track. He then testified that after the engine had passed by appellee at the switch he saw one of the doors on the east side of the car next to the commissary strike him. After the witness had stated that he had not been in a position to see the door before it struck appellee, Mr. Burford, one of the counsel for appellant, asked him this question: "Tell the jury whether or not you had been in a position where you could see the door before it struck Mr. Carter." The witness replied: "I stated to you before, Mr. Burford, that I had not; that I had never been on the east side of the car at all. I had not looked at the door. I acknowledged that to you and told you that in the other statement—that I didn't see the door until after Mr. Carter was injured and we were ready to go. Then is when I seen the door. I hadn't seen or looked at the door before that time." Counsel then asked the witness: "I will get you to tell the jury whether or not the door was standing open when you first saw it." The reply was: "I told you gentlemen that the first time I saw this door anyway open was when it hit Mr. Carter. I never seen the thing until it had hit him, as quick as he went around a little curve and as he threw the switchstand. I didn't know what hit him. I couldn't tell exactly. It was the door, I found out afterwards, is what hit him. I hadn't seen the door and didn't know anything about it prior to that time." The examination of the witness was then continued as follows: "Q. You say in your depositions here: 'Just an instant before the door struck Carter, I saw it standing open for the first time.' Mr. Bres, you say in answer to the twelfth direct interrogatory: 'This car door came open on account of the car door being in bad order, due to the lower or bottom part of the lever with which a refrigerator car door is fastened being broken off.' On what did you base that statement? A. After looking at Mr. Carter when he was hurt, after he was struck by this door, and we got our train coupled and ready to go, I said: 'Wait until I fix this door; better fix it, it is open, before it hurts some one else.' I went and closed this door and picked up a handle of some kind and drove it down in this clasp. I suppose it was a foot and a half long, and drove it down in this clasp at the bottom, after closing the doors, and tied it together. Q. Did you notice any part of the lever being gone before that time? A. No, sir; I did not. Q. You went up there close to it? A. I didn't know there was anything the matter with the car at all. Q. What do you base your statement on in these direct interrogatories that this door came open because the lever was gone? A. I said the door was jolted open. Q. You said: 'This car door came open on account of the door being in bad order, due to the lower or bottom part of the lever with which a refrigerator car door is

fastened being broken off.' A. Because it will not hold with the top lever, sir. Q. How do you know the top lever was fastened? A. I don't know. Q. How do you know but what the lever was pushed back against the car? A. I don't know that. Q. What makes you tell in this deposition that it came open because it was gone? A. If a door is closed with this latch broken it will not stay fastened on any refrigerator car. Q. If the door is closed with the bottom part fastened, it won't stay fastened? A. No, sir; it won't. Q. And that's why you base your statement on what you say there? A. Yes, sir. Q. You don't know whether it was closed or fastened? A. I don't know. Q. You don't know whether the door was pushed against the side of the car or not? A. No, sir; I don't." After the witness had testified as just set out above, appellant moved to exclude his said answer to the twelfth direct interrogatory, which also is set out above. The grounds of the motion, as stated in the bill of exceptions, were as follows: "The answer is an opinion and conclusion of the witness, in that he states positively that he never saw the door before the accident, never went near it, and wasn't in a position where he could see it; and because he further stated on the witness stand that his answer was based on an opinion formed some time after the accident, after he had finished the work at the station, and after the car had been set into the train; that from what he saw then he concluded that the door came open by reason of a part of a latch being gone, but that he never saw it prior to the accident. That the first time he ever noticed the door it was standing open." The court overruled the motion, and his action in this respect is assigned as error. In approving the bill presenting the matter, the court qualified it as follows: "The witness John Bres testified that he had been engaged as a brakeman for several years on different roads; that he was familiar with the fastenings on refrigerator car doors; that if that portion of the apparatus of a refrigerator car door was missing which was missing on the car door which struck Carter, the plaintiff, that the movement of the train would cause the same to come open, even though it be fastened at the top, because the movement of the train would cause the bottom part of the door to swing out, and this would pull the fastening at the top out; this would be caused by the jolt of the train. In this case it was shown that the front part of the car had just gone over the passing track switch; that is, had started in on the passing track. The car was subjected to the jolt caused by passing over this track. At this instant Bres saw the car door open. Bres examined the fastenings on the door, and then he was permitted to testify as shown in this bill."

[4] From the testimony set out it is clear, we think, that the witness did not know whether the door was closed and fastened or not when the car was carried from the passing to the main track, nor, if it was, when it came open, nor what caused it to come open, and that, when he said in reply to the twelfth direct interrogatory that it came open because part of the lever used in fastening it had been broken off, he was stating his opinion merely. The statement made by the trial judge in connection with his approval of the bill of exceptions indicates that he thought the witness had qualified as an expert, and that as such his opinion was admissible. But we think the testimony showing the way the door and its fastenings were constructed indicated that the question as to what caused the door to come open was one which one man of sense was as competent to answer as another, and therefore one that did not call for the opinion of experts. The jury in such a case should be allowed to draw their own conclusions from the facts shown by the testimony, uninfluenced by the opinion of witnesses, expert or otherwise. Shelley v. City of Austin, 74 Tex. 612, 12 S. W. 753.

[5] If it had appeared from the witness' answers to the cross-interrogatories that his answer to the twelfth direct interrogatory, instead of being a statement of a fact within his knowledge, was a statement of his opinion merely, there is ample authority for saying his said answer should, on motion, have been stricken out. Railway Co. v. Ryan, 72 S. W. 72; Railway Co. v. Inman, 134 S. W. 277; Railway Co. v. Renfro, 83 S. W. 21; Landa v. Obert, 78 Tex. 33, 14 S. W. 301. But we are not prepared to say that when it appeared from the oral examination he was subjected to more than a year after he answered the interrogatory, that he never saw the door on the occasion of the accident until just before or at the instant it struck appellee, and that his statement in reply to the interrogatory as to what caused the door to come open was based entirely on an examination he made of it after the accident, that his answer to said interrogatory therefore should have been stricken out. It is unnecessary, we think, to determine whether it should have been stricken out or not; for if it should have been, and if the trial court therefore erred in overruling the motion, it would not follow that the judgment for that reason should be reversed; for, as pointed out by appellee, it might very well be said that the jury, having before them the facts on which the opinion of the witness was based, predicated their verdict on those facts, and not on the opinion of the witness, and that therefore the ruling on the motion, if erroneous, should be treated as harmless. Railway Co. v. Warner, 60 S. W. 442; Railway Co. v. McElree, 16 Tex. Civ. App. 182, 41 S. W. 843; Bond v. Railway Co., 55 Tex. Civ. App. 119, 118 S. W. 867; Rule 62a for the government of Courts of Civil Appeals (149 S. W. x).

For the reason just stated, the importance of the question as to the competency of the

testimony does not arise on the assignments complaining of the action of the court in refusing to sustain the motion to exclude it. It arises, instead, on assignments we will now consider, which attack the verdict and judgment as not supported by the testimony.

From the allegations in the petition and the charge of the court it appears that the theory on which the recovery was sought and had was that appellant had been guilty of negligence, in that it failed to inspect the car and discover and repair a defect in the fastenings for the doors thereof, in consequence whereof one of the doors came open after the car moved from the passing to the main track and struck appellee as the car moved back to again take the passing track.

[6] We think it should be said that the testimony was sufficient to support findings, involved in the verdict, that the door struck appellee as he claimed it did; that the fastenings for the door were so defective as to make it probable that the door, if closed, and fastened with same, would come open when the car was subjected to such movement as it was subjected to before the door thereof struck appellee; and that the defective condition of the fastenings was due to negligence on the part of appellant. If it should be said the testimony also was sufficient to support a finding, involved in the verdict, that the door was closed and fastened at the time the car was moved to the main track, we think the assignments now being considered should be overruled; for we think it sufficiently appears that appellee was without fault in the matter, and it would then appear that the injury he suffered was due solely and proximately to negligence on the part of appellant, as alleged in the petition.

Therefore, in order to dispose of the assignments last referred to, it is not necessary to do more than to answer this question: Was the testimony sufficient to support a finding that the door was closed and fastened as the car moved from the passing to the main track?

Appellee testified that if the door had been open it would have struck him as the car passed the switch, while moving from the passing to the main track, and that because it did not then strike him, and because he thought he would have noticed it had it been open, he thought it was not then open. It must, we think, be conceded that this testimony was sufficient to support a finding that the door was closed as the car moved to the main track.

So, the inquiry may be said to be further narrowed to this question: Was there testimony to support a finding that the door also was fastened at the time this car began its movement from the passing to the main track? If the door was closed and fastened, then the testimony was sufficient to support a finding that because the fastenings were defective it came open after the car passed the switch stand where appellee was standing and before it again passed same as it moved back to the passing track. If the door was not fastened, then it is obvious the defective fastenings had nothing to do with its coming open, and therefore it could not be said that the negligence charged against appellant, in that it failed to discover and repair the defect in the car, was the proximate cause of the injury appellee suffered.

[7] Looking to the record, the only testimony we find which can be said to be directly to the point is the answer set out above of the witness Bres. to the twelfth direct interrogatory propounded to him. If that answer, construed in the light of the oral testimony afterwards given by him, also set out above, should be treated as a mere opinion of the witness, and therefore not competent as evidence, under the ruling of the Supreme Court in Henry v. Phillips, 151 S. W. 537, we are not authorized to look to it in determining the question now being considered. In that case the Supreme Court held certain testimony admitted without objection to be hearsay and therefore incompetent, and with reference thereto said: "Such incompetent testimony can never form the basis of a finding of facts in an appellate court, notwithstanding its presence in the record without objection. When the appellate court comes to apply the law to testimony constituting the facts of the case, it can only base its conclusion upon such testimony as is under the law competent. That which is not competent testimony should be given no probative force."

There being no direct evidence on which a finding that the door was fastened can be based, the question arises as to whether there was testimony from which an inference that it was fastened properly can be drawn. Appellee insists that such an inference might have been drawn by the jury from testimony showing that the fastenings for the door were so defective that had the door been fastened with same it likely would have become unfastened by the movement the car was subjected to in switching it before the door struck appellee; from testimony showing it was closed when it passed the switchstand as it moved from the passing to the main track; and from the absence of testimony showing that any one saw the door open until the instant before it struck appellee. We agree that from the testimony referred to an inference might have been drawn that the door was fastened, but we think, with as much reason, an inference might have been drawn that it was not fastened. For, certainly, if it might be inferred that the door, though fastened with the defective appliances, came open as it did, it might be inferred that it came open as it did if it was not fastened at all. The question then is: The testimony admitting of an inference either that the door was or that it

was not fastened, did the jury have a right to choose between the inferences? While not entirely clear about it, it seems to us it should be answered that they had such a right; and especially so, in view of the fact that it sufficiently appeared that the injury to appellee, if not proximately caused by negligence of appellant in failing to use ordinary care to inspect the car and discover and repair the defect in the fastenings for the doors thereof before sending it out from Texarkana, was proximately caused by its negligence in another respect, to wit, in failing to use ordinary care to·close and fasten the doors thereof before it directed that the car be placed in the train at Myrtis. In other words, in the light of the testimony, it seems that the only complaint appellant could be heard to make with reference to the finding of the jury that it was guilty of negligence is that, while it appeared from the testimony it was guilty in one of the respects stated above, it did not appear in which respect it was guilty. We do not think it should be heard to urge such a complaint against the finding.

The assignments not in effect disposed of by what has been said are believed to be without merit, and therefore are overruled.

The judgment is affirmed.

### On Motion for Rehearing.

[8-10] In reaching the conclusion that the jury had a right to choose between inferences to be drawn from the testimony, we were not unmindful of the rule invoked by appellant in its motion, which denies to a jury such a right where the inference of negligence as charged is not more reasonable than that of the absence of such negligence. But we thought the rule ought not to be applied because it then appeared to us that, if the injury suffered by appellee was not due to negligence in the respect submitted in the court's charge, it was due to negligence on the part of appellant in another respect, and it seemed to us it would be unreasonable under such circumstances to set aside the verdict and judgment. On further consideration of the matter, however, we are convinced we had no right to say as a matter of law that, if appellant was not guilty of negligence in failing to use due care to inspect the car and discover and repair the defect in the fastenings for the doors thereof, it was guilty of negligence in failing to use due care to close and fasten the doors thereof before it directed that the car be placed in the train at Myrtis. Therefore we now think the rule referred to should have been given effect in disposing of the appeal. It follows that we·think the motion should be granted; and, because the testimony was not sufficient to support the finding of the jury that negligence of appellant in the particular submitted to them was the proximate cause of the injury to appellee, that the judgment should be reversed, and the cause remanded for a new trial. It will, accordingly, be so ordered.