# Harkinson's Appeal.

1. A mother sold her place of business and contracted that " she will not engage in the same business, directly or indirectly," in the Twenty-second Ward within ten years, but would by her counsel promote the business of the purchaser; she bought a lot and put up buildings suitable for the business for her son; she *advanced* money to him for carrying on as she had done to other children in their business. The master found that the business was really that of the son and not that of the defendant, was carried on by him on his own credit and means, and not by her. There was no evidence of injury to the purchaser. Under a bill to restrain her, from aiding in the business, permitting the premises to be used for the business, or selling the property to be used for the business : *Held*, under the circumstances an injunction should not be decreed.

2. Agreements in restraint of trade generally, are void ; to be valid they must be limited in time or partial in their operation and supported by a sufficient consideration.

3. That a court of equity may enjoin against the free exercise of a trade, the violation of the agreement should not be doubtful.

4. Certainty is an essential element in the contract whose enforcement is sought by an injunction, and some appreciable damage should be shown.

5. When damages will compensate the benefit derived or the loss suffered, equity will not interfere by injunction.

March 29th 1875. Before AGNEW, C. J., SHARSWOOD, WILLIAMS, MERCUR, GORDON, PAXSON, and WOODWARD, JJ.

Appeal from the Court of Common Pleas of *Philadelphia :* In Equity : Of July Term 1873, No. 90.

The bill in this case was filed October 22d 1870, by Abraham Engard against Elizabeth Harkinson. It alleged that the defendant, on the 11th of August, owned " Harkinson's bakery and confectionery establishment," in the Twenty-second Ward, Philadelphia, where she had, for a number of years, been carrying on that business; that, at the date above mentioned she contracted with the plaintiff for the sale of the " establishment" to him for $30,000. One covenant in the contract was, that she would not engage in the same business, directly or indirectly, within the limits of the Twenty-second Ward, within ten years, but by her advice and counsel would encourage and promote the plaintiff's business interest; that plaintiff had received a conveyance of the premises, and, up to the filing of the bill, had been carrying on the business

[Harkinson's Appeal.]

of baking and confectionery; that the defendant, about April 1870, bought in fee, in her own name, a lot of ground in the Twenty-second Ward, with the avowed intention of erecting a bakery and confectionery; had since erected a building for that purpose on it, and had fitted it up, under her own direction and expense, with fixtures, &c., used only in that business, and for the purpose of having it carried on there; that David Harkinson nominally had charge of the premises, but the defendant was really the manager, and the business was carried on with the knowledge, sanction, encouragement and assistance of the defendant; she was constantly on the premises overlooking the business, making purchases, employing persons to conduct it, &c., and, directly and indirectly engaging in the business to such an extent as to induce the customers of the plaintiff to believe that she was actually prosecuting it, and to make purchases therefrom in that belief, with the intention and effect of injuring the plaintiff. The prayer was, that the defendant might be restrained for ten years, from August 11th 1868, from engaging in the bakery and confectionery business in the Twenty-second Ward; from making purchases, superintending and advising others engaged in the same business in the same limits, and from permitting the premises to be used in the same business, and from selling the premises to be used by others for the same purposes.

The defendant, admitting several of the allegations in the bill, averred that she did not know, when the agreement was executed, that there was a stipulation in it that she should not engage in the same business in the Twenty-second Ward; she admitted her purchase of the lot mentioned in the bill, and erection on it of a building adapted to the bakery business, &c., and that it was fitted up for the purpose with the intention of having that business carried on there, but denied that the fitting up was under her directions; her intention in buying the lot was that her son, David Harkinson, might go into business there, that he made and furnished the plans, the fitting up was under his orders, and the money which she had expended in the lot, in building the house, &c., was in the nature of an advancement to him; that he was the real owner, and the business was carried on solely for his benefit. She denied that she had any control of the business, or that the business of baker and confectioner, which was carried on in the premises had her encouragement or assistance, further than the advancement, &c., she had made to him, to enable him to go into business; she denied, also, the other allegations of the bill.

Replication was filed, and an examiner appointed; the pleadings and the testimony were referred to George Junkin, Esq., as master-

He found the facts as follows:—

John Harkinson, the husband of defendant, resided in German. town, in the Twenty-second Ward of Philadelphia, and for many

years carried on most successfully the business of a baker and confectioner. He amassed a considerable fortune, and he and his business were well known throughout the ward. He had four sons and two daughters. Shortly before his death, in 1863, he furnished his son Charles with about $2400, with which the latter went into the heater, stove and range business; and has continued in it ever since. In 1870, his mother gave him $2900, with which he bought out his partner. No obligation of any kind was given or demanded when these sums were given to Charles Harkinson, and he has repaid no part of the money or any interest, and there seems to have been no distinct contract of any kind for its return. In February 1864, John Harkinson died, and by his will, dated July 25th 1863, he gave two-sevenths of his estate to his daughter Marian, after the decease of his widow, and all the 'rest of his estate, absolutely, to his widow, and appointed her sole executrix. Mrs. Harkinson continued her husband's business at his well-known business stand, known as "Harkinson's," from his death up to the time of her sale to the plaintiff, in September 1868. In the summer of 1865, her son, John Harkinson, desired to go into the confectionery and bakery business for himself, having been brought up to it by his father. He first started the business in Frankford, receiving from his mother about $1400 for the purpose, and continued there about a year. His mother fitted up his store and stocked it. He then removed to Germantown, about a half a mile below his mother's store. She bought the place, taking the title in her own name and paying $5000 cash for it, subject to a mortgage of $4000. In addition to this, she paid about $2500 for repairs and fixtures, &c.

In August 1868, Mrs. Harkinson, being then upwards of seventy years of age and desirous of relinquishing business, put her business and place of business into the hands of Mr. Robert Thomas, conveyancer and real estate agent, of Germantown, for sale.

After some negotiation, a contract for the sale of her property and place of business, dated August 11th 1868, was made with plaintiff; the consideration was $30,000. The contract contained the following clause :—

" And the said Elizabeth Harkinson further agrees, that she will not engage in the same business, directly or indirectly, within the limits of the Twenty-second ward of the said city (Philadelphia), at any time within ten years from this date, but that she will by her advice and counsel, endeavor to encourage and promote the business interest of the said Abraham Engard."

The deed for the property was duly executed and delivered to the plaintiff.

In January 1870, Mrs. Harkinson gave to her son James Harkinson $5000, with which he commenced the upholstery business in Germantown ; no note or other obligation was given

or demanded for this.    It has not been repaid.    In the spring of
1870, Mrs. Harkinson, in like manner, gave to her daughter
Marian Harkinson $6000, with which she commenced the millinery
business in Germantown.    No note or other obligation was given
or demanded for this.    And the money has not been repaid.

In the spring of the same year 1870, her remaining child David,
who had been working in the confectionery and baking business,
with his brother John Harkinson, in Germantown, asked his
mother to set him up in business in Germantown.    This she de-
clined to do, "because it would not be fair to Mr. Engard."
Mrs. Harkinson, David and Marian, went to Chestnut Hill, to
look at Fox's bakery.    They met a carpenter at Chestnut Hill, by
whom Mrs. Harkinson was induced to purchase a lot of ground
next to the depot of the Chestnut Hill Railroad, and to build
thereon a house and the other appliances suitable for a bakery and
confectionery.    The title to this real estate was taken in her name;
the general plans of the house, &c., were prepared by her son
David, and she and he both took an active part in superintending
the erection and fitting up of the establishment, complete in every
respect for the business.    For the lot and buildings, she paid
$11,190.    In addition to this, she furnished about $1200, for the
purchase of the working utensils of the business, a large portion
of which she personally bought and paid for, lists of articles being
made out by David.    All of this was done openly, and without
any attempt at concealment, she stating to most of the parties
from whom these purchases were made, that they were for him.
There was no evidence to show that the plaintiff had any know-
ledge of all this at the time.

The place thus brought by her, built, fitted up and stocked, is
within the Twenty-second Ward of this city, about four miles from
Mr. Engard's store, near to the county line, next to the railroad
depot, and the connection with Germantown by the railroad, is
almost hourly every day, except on the Sabbath.    The name put
over the door was and is "Harkinson."    David Harkinson moved
to this place in August 1870, and on August 1st 1870, took out a
United States license as a retail dealer for the year ending May
1st 1871; and with some means of his own, bought the articles
necessary to start the business with; and he has continued to carry
it on there ever since, paying the taxes on the place for the year
1871.    Mrs. Harkinson purchased some few things for him at the
first, but of no great amount.    There was some slight evidence,
that she had taken some part in the management of this business;
but it was not enough to make one say that it was her business;
and certainly, was not more than a mother would be expected to
do, and would naturally do for a son, under the circumstances.
Her course with him, as to this property and business, seems to
have pretty much the same as that pursued by her with her other

[Harkinson's Appeal.]

children.   It was in each instance loosely done, and with no very definite contract or agreement; but with a general understanding, that the children were getting in advance their shares of the estate which their parents had accumulated—in no event was the money in the case of either child to be returned; and the payment of interest was to depend upon success, and most probably, would not be enforced at all.

Upon the whole evidence, the master reports, that the business carried on at the store in Chestnut Hill has been, and really is, the business of David Harkinson; and was and is not, that of the defendant; and is managed and carried on by him on his own credit, and with his own means, and not by her.

There was no proof of any special damage suffered by plaintiff, by reason of the opening of this bakery and confectionery establishment, at Chestnut Hill, or that customers had left him and gone there.

The master reported that Mrs. Harkinson's conduct was a breach of her covenant with the plaintiff and that she should be required by injunction to close the property as a bakery and confectionery until August 1878, and that she be restrained for ten years from August 11th 1868 from engaging directly or indirectly in that business, &c., within the limits of the Twenty-second Ward.

He recommended a decree in accordance with the prayers of the bill, except as to damage.

Exceptions were filed to the report of the master.   The Court of Common Pleas overruled the exceptions, confirmed the report and made the decree recommended by the master.

The defendant appealed to the Supreme Court, and in a number of specifications assigned the decree for error.

*C. S. Pancoast*, for appellant.—There is nothing in the agreement to prevent merely a rival establishment and no condition can be implied : Midland Railway Co. *v.* London & N. W. Railway Co., Law Rep. 2 Eq. 524.   The covenant is to restrain her personally, not to prevent her from setting her children up in business; such agreement would be against public policy, unreasonable and void; to be enforced the contract must be reasonable : Horner *v.* Graves, 7 Bing. 743; Morris Run Coal Co. *v.* Barclay, 18 P. F. Smith 173; Gompers *v.* Rochester, 6 Id. 194.   An injunction is not of right; a chancellor must regard not only the rights of the parties, but those also of others which may be involved : Wood *v.* Sutcliff, 2 Sim. N. S. 42 : Mayor *v.* Commissioners, 7 Barr 365; Grey *v.* Ohio & P. Railroad Co., 1 Grant 412 ; Richards' Appeal, 7 P. F. Smith 113; Clark's Appeal, 12 Id. 450; Browne *v.* Newhall, 2 Myl. & Cr. 570 ; Bonaparte *v.* Camden & A. Railroad Co., Bald. 218 ; 2 Story's Eq. 959, b. note 5.   The inconvenience of enforcing an injunction is a reason for withholding it : Collins *v.*

[Harkinson's Appeal.]

Plumb, 16 Vesey 454 ; Deitrichen *v.* Cabbum, 2 Phil. 52 (22 Eng. Chanc.) ; Lumbs *v.* Wagner, 1 DeG., M. & G. 620 ; Jaster *v.* Partington, 7 Id. 328 ; South Wales Railroad Co. *v.* Wythes, 5 Id. 880 ; Hoop *v.* Broderick, 11 Sim. 47.

*J. G. Johnson*, appellee.—Damage is presumed to result from a breach of covenant, and the defendant will be restrained although no actual damage is proved : Attorney General *v.* Railway Co., Law Rep. 3 Ch. Ap. 104. The acts of defendant were indirectly engaging in the business : Perkins *v.* Lyman, 9 Mass. 522.

Mr. Justice MERCUR delivered the opinion of the court, May 10th 1875.

The first question which arises in this case is, has the appellant violated her agreement, not to engage, either directly or indirectly, in that business, the good-will of which she sold to the appellee ?

Her husband had owned and carried on a bakery and confectionery establishment, in the Twenty-second Ward, in the city of Philadelphia. He devised most of his estate to the appellant absolutely, appointed her his sole executrix, and died leaving six children. She continued the business for a time, and then sold to the appellee the establishment, together with the good-will of the business, for a gross sum, in 1868. At the same time, she agreed not to engage in the same business, directly or indirectly, within the limits of the said ward, at any time within ten years from the date of said sale ; but, by her advice and counsel, she would endeavor to encourage and promote the business interest of her vendee. During the life of her husband he had furnished one of their sons a few thousand dollars, with which he had entered into business. After the death of her husband the appellant had also furnished the same son several thousand more. She had also furnished a second son with an amount somewhat larger, to start him in business. In each case no obligation was demanded or given, nor had any of the money, or interest thereon, been repaid, nor does it appear that there was any distinct agreement of any kind for its return.

In 1870, appellant purchased a lot at Chestnut Hill, within the said ward, near the county line, but four miles from the establishment sold to the appellee. On it she built and fitted up a house, and the other appliances suitable for a bakery and confectionery. The general plan of the house and its appertenances was arranged by a third son, David, and both he and his mother took an active part in superintending the erection and completion of the establishment. Having put over the door the name " Harkinson," she gave to her son David the possession of the establishment. He took out license as a retail dealer, and had continued to carry on the business down to the time of the hearing before the master.

The master found and reported that " the whole evidence shows that Mrs. Harkinson did what she had done in pursuance of a plan pursued towards her other children, and which seems to have been understood and been acquiesced in by all of them.".

There appears to have been no specific binding agreement between David and the appellant, but an understanding that after he should be thoroughly established in business he should pay her interest on the sum advanced, and in case of her death, the property was to be his ; but if its value was more than his share of his father's estate, he was to make payment to his brothers and sisters of the excess. He thus took and held the possession, subject to an equitable adjustment, with his brothers and sisters, of its relative value on the death of his mother. He has paid no rent and no interest on the investment. Upon the whole evidence, the master reported " that the business carried on at the store in Chestnut Hill has been and really is the business of David Harkinson, and was and is not. that of the defendant below, and is managed and carried on by him on his own credit, and with his own means, and not by her." Nevertheless, the master found that by furnishing the means and fitting up the establishment for her son, by which he was enabled to engage in the business, the appellant had violated the true intent and spirit of her contract. The case of Perkins v. Lyman, 9 Mass. 522, goes far towards sustaining that conclusion. · Yet that case is distinguishable from the present in this : there, with an intent to violate his contract, with an intent to engage in the business from which he was excluded, he fitted up and owned a vessel for such a voyage. His design was to be interested in the business ;. thus throwing his knowledge, skill and experience into competition with one, in violation of his agreement. In the present case the appellant did not erect nor furnish the establishment with any intention that she would engage in the business, or be in any manner interested therein. In furtherance of her plan for aiding her children, she had substantially advanced to him his supposed share in her estate. It was invested in that particular for his benefit, and not hers. The effect was the same as if she had given or loaned to him money, with a knowledge that he intended so to use it. It is certainly going very far to say that by the general terms used in this agreement a parent has covenanted to control the business of her son by withholding from him his share in her estate. Without deciding adversely to the conclusion of the master and court on this point, we think the case is not free from doubt.

2. Does the appellee present a case which should move a chancellor to enjoin the appellant against permitting the premises to be used in carrying on the business in which her son is engaged ? Is it a violation of such a character, and to such. an extent, as to justify this specific remedy ?

[Harkinson's Appeal.]

We have clearly shown that the appellant personally is nowise engaged or interested in the business, otherwise than by the master's assumed indirectness. So there is no occasion to enjoin her against doing what she has not done, and does not propose to do. Shall she turn her son out, or enjoin him against pursuing his business? An attempt to do either might not be entirely successful.

It must be borne in mind that agreements in restraint of . trade *generally* are void. To give validity to them they must be limited in time or partial in their operation, and be supported by a sufficient consideration : Gompers *v.* Rochester, 6 P. F. Smith 194.

When a court of equity is called upon to enjoin a person against the free exercise of a trade, the violation of the agreement ought not to be doubtful. Hence, a merchant, who, upon selling his stock in trade and business, covenants not to carry on the same business at the same place or within certain limits surrounding, and who thereupon gives up his place of business, will not be enjoined from afterwards soliciting and procuring orders within the specified territory—the question of whether this constitutes a breach of the covenant being regarded as too doubtful to warrant an injunction, without bringing an action: High. on Inj., § 743; Sivener *v.* Evans, 2 De Gex, M. & G. 740. So, where one undertakes the management of the business of a chemist, having. covenanted against carrying on the same business in his own name and for his own benefit, or in the name and for the benefit of any other person,· within a certain radius, under a specified penalty named by bond, and he afterwards solicits orders for another chemist within the limits specified, the effect of such conduct upon the covenant in question is regarded as too doubtful to warrant a preliminary injunction : High. on Inj., *supra;* Clark *v.* Watkins, 9 Jur. N. S. 142. If, however, one agrees not to set up or follow, or practice a particular business, and then acts as·an assistant or manager in the business for another person, it is a violation of his covenant : Dales *v.* Weber, 18 Weekly Rep. 993. In such a case his covenant not only excluded him from interest or profit in the business, but also from personal employment therein. Nor is a covenant against engaging in a certain trade, or in any matter pertaining thereto, within a certain district, regarded as violated by loaning money to one engaged in such business, the loan being secured by mortgage on the business premises, even though the covenantor may know that the mortgagor's only means of repaying `the money is out of the profits of the business : High. on Inj., *supra;* Bird *v.* Lake, 1 Hem. & Miller 338.

"There is no power," said Mr. Justice Baldwin, in Bonaparte *v.* Camden & Amboy Railroad Co., 1 Bald. Cir. C. R. 218, "the exercise of which is more delicate, which requires greater caution, deliberation, and sound discretion, or is more dangerous in a

doubtful case than the issuing of an injunction. It is the strong arm of equity that never ought to be extended, unless to cases of great injury, where courts of law cannot afford an adequate or commensurate remedy in damages." It ought, therefore, to be guarded with extreme caution, and applied only in very clear cases: Story's Eq. Jur., § 959 *b*. Certainty is an essential element in the contract, whose enforcement is sought by injunction, and where a covenant is uncertain in its provisions, no injunction will be allowed: High. on Inj., § 720. So, too, it is usually requisite that the party aggrieved should show some appreciable damage, as the result of the breach of covenant which he seeks to restrain: Id. Where damages will compensate either the benefit derived or the loss suffered, equity will not interfere: Grey *v.* Ohio & Penna. Railroad Co., 1 Grant 412. So, where either party may suffer by the granting or withholding an injunction, the rule in equity requires the court to balance the inconveniences likely to be suffered by the respective parties, by means of the action of the court, and to grant or withhold the injunction according to a sound discretion: Id.; Richards' Appeal, 7 P. F. Smith 105. A court of equity will not interfere if the damage is slight, and the nuisance is of a temporary character, so that damages at law would furnish an entire and adequate remedy : Bisph. Eq., § 440. It was said in Butler *v.* Burlesow, 16 Vermont 176, "when there is an express covenant, and an uncontroverted mischief arising from the breach of it, equity will grant an injunction to restrain the breach." In Clark's Appeal, 12 P. F. Smith 447, Mr. Chief Justice Thompson said, "injunction is a remedy in equity, to restrain or prevent such acts of wrong, as would, if done, result in irreparable injury to the property of the complainant. No decree should ever be made to be followed by writ of injunction, unless this element be clearly established." There should be some irreparable injury, either committed or threatened, to justify an injunction.

In McClurg's Appeal, 8 P. F. Smith 51, the question of injury sustained is not distinctly presented in the report of the case, yet, in the opinion of Mr. Justice Sharswood, he clearly assumes it to exist, and cites with approbation the case of Butler *v.* Burlesow, *supra*.

The appellant denies, in her answer, that she has encouraged and promoted the business of others with the intent and effect of injuring complainant; on the contrary, she alleges and avers that she has advised and encouraged the old customers of her place to continue their custom, and has endeavored to remove objections on their part to purchasing of the appellee. The master has found " there was no proof of any special damage suffered by plaintiff (below) by reason of the opening of this bakery and confectionery

established at Chestnut Hill, or that customers had left him and gone there."

The master does not find that this establishment will be any more injurious to the appellee in the future than it has been in the past. The proof then not only fails to show irreparable injury to the property of the appellee, which cannot be compensated in damages, but shows that no appreciable damaged has been done to, or suffered by him.

It is not the province of courts to decide abstract questions, but to determine relative rights, and to redress relative wrongs, according to the rules of law and equity.

The complaint here rests on an alleged violation of a contract. The fact of a violation is not free from doubt. The appellee has not sustained, nor has he reason to fear, any substantial injury to his property. Under all the circumstances, it is not a case that now calls for the exercise of the high power invoked. We think the learned judge erred in adopting the conclusion of the master, and in decreeing accordingly.

Decree reversed, and bill dismissed at the cost of appellee.