## PERREN v. BAKER HOTEL OF DALLAS, Inc.

No. 2900.

Court of Civil Appeals of Texas. Waco.

March 9, 1950.

Rehearing Denied March 30, 1950.

Carter & Gallagher, Dallas, R. G. Carter, Dallas, Ben T. Warder, Jr., Dallas, for appellant.

Callaway & Reed, Dallas, Carl B. Callaway, Dallas, O. D. Montgomery, Dallas, Cantey, Hanger, Johnson, Scarborough & Gooch, Fort Worth, for appellee.

HALE, Justice.

Appellant, O. J. Perren, sued appellee, Baker Hotel of Dallas, Inc., a corporation, under the Declaratory Judgments Act, Vernon's Ann.Civ.St. art. 2524—1, to establish the validity of a verbal contract of lease covering a suite of seven rooms in appellee's hotel for the lifetime of his wife, or during the joint lives of himself and his wife, at a rental of $500.00 per month. He alleged in substance that the verbal contract upon which he relied was entered into about the year 1940 as a result of negotiations between his wife and Fenton J. Baker who as President and General Manager of appellee was acting within the scope of his actual or apparent authority when he entered into the verbal agreement on behalf of appellee. He also sued for damages alleged to have resulted from an increase in rent charged after the consummation of the lease, for penalties under the federal Housing and Rent Act of 1947, 50 U.S.C.A.Appendix, § 1881 et seq., and for an injunction against appellee enjoining it from interfering with his possession of the leased premises. Appellee answered with various pleas in bar and in addition thereto it filed a cross-action against appellant, alleging that his tenancy

was terminated as of May 5, 1948 and praying for a judgment decreeing the right of possession of the rooms to be in appellee.

The case was tried before a jury. After the close of the testimony introduced by appellant the trial court granted the motion of appellee for an instructed verdict and rendered judgment accordingly. Appellant says the court below erred in granting appellee's motion for an instructed verdict and in rendering judgment for it because the evidence was such as to require the court to submit to the jury for determination the material questions relevant to whether or not the parties entered into the verbal lease agreement as alleged by appellant.

Before he was entitled to obtain any relief in this cause it was necessary for appellant to establish by competent, admissible evidence the existence of each essential fact element involved in the verbal contract declared upon. In passing upon the competency of the evidence to establish such facts, or to raise issues for the jury with reference thereto, it was and is the duty of the courts to view the evidence as a whole and all reasonable inferences that may be drawn therefrom in the light most favorable to appellant. When thus viewed, if there was any evidence, either direct or circumstantial, which could have properly served as the basis for a legal inference of the essential facts sought to be established, then such issues, if otherwise material, should have been submitted to the jury. On the other hand, if there was no evidence of probative force establishing or tending to establish one or more of the ultimate fact elements involved in the verbal contract relied upon, or if the probative force of slight testimony with reference thereto was so weak that it only raised a mere surmise or suspicion of the existence of some or all of the essential facts sought to be established, then it was the duty of the trial court to withdraw the case from the jury or to instruct the verdict. Texas Pacific Coal & Oil Co. v. Wells, Tex.Civ.App. 151 S.W.2d 927; Wells v. Texas Pacific Coal & Oil Co., 140 Tex. 2, 164 S.W.2d 660; Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059.

Appellant and his wife each testified at length upon the trial. According to the testimony of Mrs. Perren she and her husband had lived continuously in the Baker Hotel since 1931. At the beginning they occupied two rooms in the southeast corner on the thirteenth floor of the hotel for which they paid a rental of $150.00 per month. In 1936 they moved into three rooms in the northwest corner on the same floor of the hotel for which they paid a rental of $300.00 per month. In the latter part of 1939 or the early part of 1940 Mrs. Perren began discussions with Mr. Baker relative to the occupancy of four additional rooms adjacent to the suite then occupied by her and her husband. She testified in substance that she had been in ill health for more than 30 years and had been under the care of doctors since she was 17 years of age; that she wanted to buy a home prior to the time she arranged with Mr. Baker in 1940 for the additional rooms but her husband did not feel that her physical condition was such as to permit her to supervise a home; that she then conceived the idea of fixing up an apartment in the hotel according to her own designs so that she could occupy it like a house, with one of the additional rooms to be used by Mr. Perren as his office; that she tried to induce Mr. Baker to fix up the apartment for her at the expense of the hotel but he declined to do so; and that she then decided, with the consent of her husband, to fix the apartment like she wanted it and she did so at an expense of over $12,000.00. She testified in detail as to the alterations which she made and the itemized expense incurred, some of the major items being the installation of air-conditioning, plastering, sound proofing, wiring, hardware, wood-work, carpets, plumbing, painting, etc.

With reference to her conversations with Mr. Baker concerning her agreement with him, Mrs. Perren testified that she told Mr. Baker while discussing the matter of repairing the apartment at her own expense that she wanted the rooms as long as she lived. Her testimony was in part as follows:

"Q. What conversation did you have with Mr. Baker when Mr. Baker advised

you that he wouldn't pay for fixing up the apartment like you wanted? A. I asked him if he would give me permission to fix it up like I wanted if Mr. Perren would allow me to, and he said he would have to know what I was going to do; that if everything was all right with the people in the hotel it was all right with him, and I told him if I had to stay until I died it was livable; * * *

"Q. What did you tell Mr. Baker with reference to how long you wanted the apartment? A. Until the day I died. * * *

"Q. When you told Mr. Baker you wanted to rent that apartment until you died, what did he say to you? A. I just told him—is that all right?

"Q. Sure, tell us what you said and what he said. A. It would be much better for me in here than a hospital and sometimes I would have to stay in bed and I said, 'I can stay in this room and I can have my books and my radio and have air conditioning and I would be comfortable and maybe I wouldn't even have to have a nurse and Mr. Perren could help look after me', and if I had to have a nurse I was fixed for it, and I said, 'If something was to happen to me, I wouldn't want Mr. Perren to walk out and give it up', and I would want him to stay there and keep it if anything happened to me suddenly. * * *

"Q. Tell us what you said to Mr. Baker with reference to how long you wanted it? A. I said just the same thing. 'I will probably die right in this corner bedroom.' The doctors told me I had to have a certain amount of rest, and I am getting older and he told me I was doing too much as it was, and I should stay in bed and take better care of myself, and I said, 'I would be much happier.'

"Q. When you told Mr. Baker you wanted that apartment for the rest of your life, what did he say? A. He finally agreed to it.

"Counsel for appellee: I object to that.

"Counsel for appellant: Mrs. Perren, I know he agreed to it.

"Counsel for appellee: Just a second.

"The Court: Counsel, remarks like that just are not proper.

"Counsel for appellant: I was trying to explain to her that would be a short-hand rendition, and I wanted her to state the conversation. * * *

"Q. The question is what did he say in so far as you can recall? A. That has been ten years ago; that is a thing I am unable to tell word for word. All I know, he finally agreed—I don't know how to tell it. * * *

"Q. Did you have an agreement at that time on what you would pay per month for the apartment? A. Oh, yes.

"Q. And that was $500.00 per month? A. That's right. * * *

"Q. Would you have gone ahead with these repairs to this apartment but for what Mr. Baker told you? A. I don't think I am that dull or stupid.

"Q. Your answer is no, you would not? A. Yes sir, I wouldn't be that dull or stupid."

Appellant testified that his wife handled the negotiations with Mr. Baker in 1940 for additional space in the hotel, that he discussed the matter with her and consented to and approved the arrangements she had made. On cross-examination he admitted receiving three letters from Mr. Baker during the early part of 1941 concerning such arrangements. In the first of these letters, dated January 18, 1941, it was stated that the purpose thereof was to "confirm our verbal discussion regarding the arrangements in connection with the revamping and redecorating of your suite." Among other commitments on the part of the hotel, this letter recited: "If you decide to install the air conditioning equipment, it is understood that at any time you move from the hotel that the motor used in connection with this installation belongs to you and also the hotel agrees to pay the equivalent under this contract, of an individual unit amounting to $250.00." The letter concluded with this paragraph: "Please sign the duplicate copy of this agreement in the space provided for your acceptance." The duplicate copy was signed by appellant as requested. In a subsequent letter of March 31, 1941,

supplementing the letter of January 18, 1941, Mr. Baker stated that the hotel would do the necessary plastering of the new suite, etc., and "We will also purchase two new mattresses for the twin beds, and in the event you move out and decide to take the carpet with you, you may have it at what it cost plus the pro rata share of the wear and tear." In the third letter dated April 14, 1941, the above quotation from the letter of March 31st was corrected by substituting the word "less" for the word "plus". In none of these letters was there any reference to the period of time during which appellant would be permitted to occupy the premises or required to pay the rental thereon. Appellant also admitted that he thought he had the right under such arrangements to move out if he wanted to do so without a lawsuit.

Appellant testified further that he paid $500.00 per month for the suite until August 1, 1947; that while he was in Massachusetts he received a letter from Mr. Baker dated July 1, 1947, advising that the hotel was unable to meet the daily demands for transient rooms and hence it would be necessary for him to vacate the suite or to pay for the same at the daily rate of $40.00 per day, beginning the first of the following month; that he paid for the rooms from August 1, 1947 to and including April 1, 1948 without any protest at the rate of $40.00 per day; that while he was in Florida he received a letter from Mr. Baker dated February 4, 1948, requesting that he release possession of the suite and notifying him to vacate the premises by March 5, 1948; and that he wrote Mr. Baker under date of February 28, 1948, that he would agree to vacate the premises on May 5, 1948, if Mr. Baker would withdraw his prior notice to vacate by March 5, 1948, and such proposal was agreed to by Mr. Baker. He further testified that he did not know until he returned to Dallas in April of 1948 and conferred with his attorney that he had any legal right to hold the premises under the verbal arrangements which his wife had made with Mr. Baker concerning the same.

After due consideration of all the evidence developed at the trial we have concluded that the court below did not err in granting the motion of appellee for an instructed verdict. We shall note briefly some of the considerations upon which our conclusion is based.

In our opinion the competent, admissible evidence introduced upon the trial, when viewed in its entirety in the light most favorable to the contentions of appellant, was wholly lacking in probative force to serve as the basis for a legal inference that appellant entered into a valid and enforceable lifetime lease contract with appellee for the suite of rooms in controversy. If such a contract was entered into it necessarily consisted of a verbal offer made by Mrs. Perren on behalf of appellant and a verbal acceptance thereof by Mr. Baker on behalf of appellee.

As we understand the testimony of Mrs. Perren she discussed with Mr. Baker the subject matter here under consideration at frequent intervals of time extending over a period of a year or more. From what she stated in these discussions and conversations, could Mr. Baker have reasonably understood or inferred that Mrs. Perren was offering on behalf of appellant to pay a rental of $500.00 per month to appellee so long as she might live or so long as she and her husband might live? We think not. It appears to us that her statements were entirely too indefinite, uncertain and ambiguous for that purpose. As said by the court in the case of Morrow v. De Vitt, Tex.Civ.App., 160 S.W.2d 977, 983, (er. ref.): "It is essential that an offer be certain and unambiguous since the acceptance is required to be identical with the offer and without certainty in the offer there is no meeting of the minds and no agreement." See also: 51 C.J.S., Landlord and Tenant, p. 530, § 24; Bracken v. Hambrick, 25 Tex. 408; Dunn v. Price, 87 Tex. 318, 28 S.W. 681; Willis v. Thomas, Tex.Civ. App., 9 S.W.2d 423 (er. dis.); Holcombe v. Lorino, 124 Tex. 446, 79 S.W.2d 307; Ortiz v. Roderiguez, Tex.Civ.App., 93 S.W. 2d 804.

If there was no meeting of the minds of Mrs. Perren and Mr. Baker on a lifetime lease contract then the fact that Mrs. Perren might have relied upon what

Mr. Baker told her in making repairs to the apartment becomes immaterial and unavailing to appellant as a circumstance tending to establish the existence of the verbal contract declared upon by him. 20 T.J. p. 326, Sec. 115; Clegg v. Brannon, 111 Tex. 367, 234 S.W. 1076; Francis v. Thomas, 129 Tex. 579, 106 S.W.2d 257. The burden was upon appellant to establish the existence of a lifetime contract of lease which was within an exception to the Statute of Frauds, Vernon's Ann.Civ.St. art. 3995, and that the acts relied upon by him were referable to and done in reliance upon such lifetime lease. 37 C.J.S., Frauds, p. 822, § 286; Kelly v. Kelly, Tex.Civ.App., 291 S.W. 631. We think the circumstances in evidence in this case are equally as consistent with the contention that no lifetime lease contract was made as they are with the contention that such a contract was made. Where circumstances are equally consistent with the existence and nonexistence of an ultimate fact sought to be established, such circumstances are wanting in probative force as any evidence tending to establish the existence of the ultimate fact. 17 T.J. p. 909, Sec. 409; Kansas City Southern R. Co. v. Carter, Tex.Civ.App., 166 S.W. 115; Stewart v. Miller, Tex.Civ.App., 271 S.W. 311 (er. ref.); Green v. Texas & P. Ry. Co., 125 Tex. 168, 81 S.W.2d 669; Aetna Ins. Co. v. English, Tex.Civ.App., 204 S.W2d 850.

 It might well be inferred from the testimony of Mrs. Perren that it was her intention to secure permission from Mr. Baker to make the improvements desired by her to the rooms then being occupied by her and her husband at a rental of $500.00 per month with the understanding that if such improvements were made she and her husband could continue to use and occupy the same at $500.00 per month as long as they wished to do so. However, even if there had been clear and convincing proof that such offer was duly made and accepted, we do not think the agreement evidenced thereby would have had the legal effect of vesting in Mrs. Perren or her husband a life estate in the premises. Since she and her husband would have had the right under such agreement, if any, to terminate the same at will, the agreement would have evidenced only an estate at will terminable at any time by either party thereto. Beauchamp v. Runnels, 35 Tex.Civ.App. 212, 79 S.W. 1105; Hill v. Hunter, Tex.Civ.App., 157 S.W. 247 (er. ref.); Norman v. Morehouse, Tex.Civ.App., 243 S.W. 1104 (er. dis.); Wildscheutz v. Lee, Tex.Civ.App., 281 S.W. 1105; Holcombe v. Lorino, 124 Tex. 446, 79 S.W.2d 307.

 Assuming, however, that the testimony was sufficient to serve as the basis for a legal inference that Mrs. Perren submitted on behalf of her husband an unequivocal offer to rent the rooms during the lifetime of herself or of her husband, was it shown that Mr. Baker unconditionally accepted such offer and if so that he had authority, actual or apparent, to bind appellee by such agreement? We think not. The only evidence of such acceptance, if any, was the statement by Mrs. Perren that "he finally agreed to it." In our opinion this testimony was not only an improper "shorthand rendition", as suggested by counsel for appellant, but it was nothing more than a bare conclusion on the part of the witness concerning a question of law and such testimony had no probative force, even though it had been admitted without any objection. Henry v. Phillips, 105 Tex. 459, 151 S.W. 533; Webb v. Reynolds, Tex.Com.App., 207 S.W. 914; Casualty Underwriters v. Rhone, 134 Tex. 50, 132 S.W.2d 97. Moreover, there was no direct evidence that Mr. Baker had any authority, either actual or apparent, to enter into any such unprecedented agreement on behalf of appellee and we do not think the circumstances in evidence were sufficient to raise any issue of fact with respect thereto. Leak v. Halaby Galleries, Inc., Tex.Civ.App., 49 S.W.2d 858 (er. ref.); Babicora Development Co. Inc. v. Edelman, Tex.Civ.App., 54 S.W.2d 552 (er. dis.); Amerada Petroleum Corp. v. Mexia Big Pool Royalty Co., Tex.Civ.App., 220 S.W.2d 497 (er. ref. n.r.e.).

 Assuming further that Mr. Baker accepted an unconditional offer of Mrs. Perren to rent the rooms for life and that he was duly authorized to make such agreement on behalf of appellee, the subsequent letters written by Mr. Baker to appellant in 1941 clearly evidence a new agreement

whereby appellant was given the right to terminate the lease contract at will and consequently it must be held that the provisions of the latter contract in writing superseded the conflicting provisions in the prior verbal agreement with respect to the duration of the lease. Willeke v. Bailey, 144 Tex. 157, 189 S.W.2d 477.

 And finally, since appellant admitted that under the arrangements made with Mr. Baker he considered that he could move out of the rented rooms at any time he wanted to do so without any lawsuit, it is our opinion that he is conclusively bound by such admission, regardless of any construction that could be placed upon the testimony of Mrs. Perren as to the arrangements made by her. Stanolind Oil & Gas Co. v. State, 136 Tex. 5, 133 S.W.2d 767, 145 S.W.2d 569; LaFleaur v. Kinard, Tex.Civ.App., 161 S.W.2d 144 (er. ref.).

Because we have concluded that it was the duty of the trial court to grant the motion of appellee for an instructed verdict, the judgment appealed from is affirmed.