EX PARTE CHARLES V. AND VICTOR J. LAROCCA

No. A-5401. Decided October 12, 1955.
(282 S.W. 2d Series 700)

*John H. Benckenstein,* of Beaumont, *Looney, Clark* and *Moorhead,* and *Martin Harris,* all of Austin, for relators.

*George M. Sonfield, Keith, Mehaffy & McNicholas* and *Quentin Keith,* all of Beaumont, for respondents.

MR. CHIEF JUSTICE HICKMAN delivered the opinion of the Court.

By this original proceding Charles V. and Victor J. LaRocca, hereinafter referred to as Charles and Victor, seek release from the restraint of a judgment of a District Court in Jefferson County adjudging them to be in contempt of that court.

On July 11th of this year we granted a temporary writ under authority of which relators were released on bail pending a hearing of the application on its merits. The case was submitted on briefs and oral argument on July 20, and on July 27, just before adjournment of the court for its summer vacation, it entered an order remanding the relators to the custody of the Sheriff of Jefferson County and providing that no motion for rehearing would be entertained. In view of the press of matters for disposition at that time it was determined that an opinion could not be prepared prior to adjournment, and the order accordingly recited that an opinion would be filed later. This is written in compliance with that order and will be filed as the opinion of the court.

■ Prior to the institution of the present litigation Charles was engaged in the business of selling gasoline and lubricating oil at wholesale in Jefferson County. On January 30, 1952, he entered into a contract with Howard-Reed Oil Company, Inc., a business competitor, by the terms of which he sold to it all of his interest in the business, including certain equipment, together with the good will of the business. As part consideration for the sale he agreed "not to engage in the character of business in which I am now engaged in Jefferson County, Texas, for a period of 5 years from the first day of February, 1952 either by establishing a new business or a department of an existing business or in any other manner whether directly or

indirectly." Thereafter, on August 28, 1952, Howard-Reed removed all of its products from the premises theretofore occupied by Charles to a new location in the city of Beaumont, whereupon, for a valuable consideration, the bulk plant was returned to Charles and the lease contract cancelled. Later, Charles entered into a contract with Ada Oil Company of Houston under the terms of which he began the wholesale distribution of petroleum products in Jefferson County under the same firm name he employed theretofore. Thereafter, on June 7, 1954, an order was made by the District Court in a suit of Howard-Reed against Charles which temporarily enjoined him from in any manner engaging in the business of distributing gasoline and lubricating oils at wholesale within the limits of Jefferson County. The order was formally entered and dated June 8, 1954. Both Charles and his brother, Victor, were served with copies of the temporary injunction, although Victor was not a party to the suit. Charles perfected an appeal to the Court of Civil Appeals at Beaumont, which court, on March 31, 1955, affirmed the judgment of the trial court. 277 S.W. 2d 769. No application for writ of error was filed and the judgment became final at the expiration of the time allowed for filing same.

Howard-Reed then sought to have the District Court adjudge both Charles and Victor to be in contempt of that court. Victor, who was not a party to the injunction suit, applied to the Court of Civil Appeals for leave to file a petition for writ of prohibition. His petition was granted and the writ of prohibition issued. On May 21, 1955, Howard-Reed was granted permission by the Court of Civil Appeals to dismiss its motion seeking to have Charles and Victor punished for contempt for violation of the temporary injunction. On June 15, thereafter, Howard-Reed filed its second amended original petition in the District Court seeking to have both Charles and Victor adjudged in contempt for violating the temporary injunction by acts done after May 21, 1955. Notice to show cause was duly served upon both Charles and Victor, and upon a trial of the motion for contempt the District Court, on July 8, entered an order holding both Charles and Victor in contempt of court for violation of the temporary injunction, fixing the punishment of Charles at a fine of $100.00 and confinement in jail for two days and that of Victor at a fine of $50.00 and confinement in jail for twenty-four hours. That is the order under attack in this proceeding. It contained this recital:

"The Court here and now, upon the testimony adduced upon the trial of this cause, from observing the conduct and demeanor

of the witnesses, and from all of the facts offered in evidence finds that the said defendants, and each of them, with the purpose in mind, did conspire to thwart the order of this Court dated June 8, 1954, and to do by indirection through Victor J. LaRocca the very things which this Court had forbidden the said Charles V. LaRocca to do; and the Court here and now finds from the credible testimony that the allegations of contempt as set forth in the affidavit filed by the plaintiff have been established beyond a reasonable doubt, and that the said defendants, and each of them, are guilty of contempt of this Court by willfully violating said temporary injunction and should be punished therefor."

It is not contended that the trial court did not have jurisdiction of the parties and the subject matter of the suit. Neither is the regularity of the procedural steps in the contempt proceedings questioned. The sole question for decision is whether there was any evidence offered at the trial upon which the trial judge could base the conclusions above quoted. If not, relators have been denied due process of law and the contempt order was and is void. Ex parte Helms, 152 Texas 480, 259 S.W. 184; Ex parte Morris, 147 Texas 140, 215 S.W. 2d 598.

This brings us to a consideration of the testimony on which the trial judge based his conclusion that the relators conspired to thwart the court's order and to do indirectly through Victor what the court had enjoined Charles from doing. That testimony may be briefly summarized as follows:

The suit for temporary injunction was tried on June 7, 1954, and at the conclusion of the evidence the court granted the injunction. On the following day, June 8, the order granting the writ was formally entered. On the night of June 7 Charles first discussed the injunction with Victor. At that time Victor was employed as production manager of the Seven-Up Bottling Works in Beaumont at a salary of $85.00 a week, which position he had held for several years. He had had no experience in selling gasoline and oils at wholesale. The next day, June 9, Charles went to Houston, where he conferred with officials of Ada Oil Company. On that occasion the jobber contract which he had with hte company was cancelled and his account was settled. Upon returning from Houston that evening about seven or eight o'clock, Charles went to Victor's home. Victor testified that he and Charles did not come to any specific agreement on the evening of June 9, and that he knew for the first time what the deal was when an attorney employed by Charles told him

what it was when they met the next day for the first time at the bank. The testimony of Charles concerning the time and place of making the agreement with Victor is confusing. We have been unable to harmonize his statements. At one place in his testimony he stated that Victor came to him and made him a proposition to rent his premises, buy his stock and certain personal property, and that he accepted the offer. The time when that occurred is not clear. At another place in his testimony he testified that on the evening of June 9, after his return from Houston, the terms of the agreement were agreed upon and were later reduced to writing. At still another place he testified that the time he first knew that Victor was going to agree to his terms was on June 10 shortly before noon. Victor further testified that on the morning of June 10, about 10:30 o'clock, a man named Ben Day, a representative of Ada Oil Company, came to the plant where he was working and asked him if he was interested in taking over Charles' business. He had never met Ben Day before and had no appointment with him and did not know that he was coming to town. At about 1:30 o'clock that afternoon a meeting was held in the First National Bank of Beaumont. Present at the meting were Ben Day, Howard Gardner, Vice President of the bank, Victor, Charles and the attorney employed by him. Victor had never met Charles' attorney before. He testified that he did not know what the deal was until he got to the bank and saw the papers prepared by the attorney, who told him what it was; that at that time he had no money and before he met the attorney at the bank he did not know how much money would be involved. The purpose of the meeting at the bank seems to have been to procure a loan for Victor in order to enable him to finance the transaction and to sign the papers necessary to consummate the deal.

At that meeting the bank made a loan of $8,000.00 to Victor. The note was made payable in seventy-six days and was signed, "Jefferson Oil Company by Victor J. LaRocca." At that time Victor had not established a credit line at the bank and had no money. He testified that he could not borrow $8,000.00 at the bank by himself without Charles' signature. Nothing on the face of the note indicated that Charles was bound, but he was in fact bound because of his signing a written instrument guaranteeing the payment of the note. On the faith of that guarantee the loan was made. Gardner, the Vice President of the bank, testified that the customary procedure for a person endorsing a note was to have him place his signature on the back of the note, and that requiring a person to guarantee a note by a separate instrument was an unusual procedure by

his bank. Victor further testified that he did not know how much money would be involved in the deal when he went to the bank to meet Charles' attorney, who had brought along the prepared papers for him to sign. He did not know how much merchandise Charles had. He had no inventory of that merchandise or money to pay for it. He testified that he and Charles took the inventory after the bill of sale was delivered. He thought it was on June 11. However, Charles testified that he had never been on the property that was leased after the injunction was issued on June 8.

The deal was financed in the following manner: Victor paid Charles $3,000.00 cash out of the $8,000.00 loan and gave his unsecured promissory note to Charles for the balance due, payable in thirty-four monthly installments of $100.00 each and one installment of $98.50. The last payment was due on February 10, 1957, nine days after the expiration date of the injunction. The note was to bear no interest until after maturity.

Charles leased the plant to Victor together with personal property used in connection with the business. Rent was payable in monthly installments of $200.00. The lease was personal to Victor and subletting was prohibited. The term of the lease was two years, seven months, and sixteen days, expiring on the expiration date of the injunction.

In cases too numerous to be cited in this opinion this court has declared the rule to be that a proceeding of this nature constiutes a collateral attack upon the judgment of the trial court, and in order for the contempt judgment to be subject to such an attack it must be absolutely void. We have no authority to evaluate facts. As we stated in Ex parte Fisher, 146 Texas 328, 206 S.W. 2d 1000, "We may consider the facts only for the purpose of determining whether they constitute acts sufficient to confer jurisdiction upon the court to make the particular order." And, as held in Ex parte Tyler, 152 Texas 602, 261 S.W. 2d 833, the fact that a judgment may be erroneous does not render it void. If it should be granted that the trial court drew an incorrect conclusion from this testimony, that fact would not make the judgment void. It can be declared void by this court if, and only if, the testimony constituted no evidence at all. In our opinion the least that can be said concerning the testimony above pointed out is that it constituted some evidence of the guilt of relators. We need go no further than that.

During the oral submission of this case the point was raised

that the circumstances are equally consistent with the non-existence of respondents' guilt as with its existence, and therefore wanting in probative force. The rule sought to be invoked has no application here. Trial courts, courts of civil appeals, and the Court of Criminal Appeals have the power to evaluate evidence, but this is a court of law and does not possess that power.

As pointed out in the beginning of this opinion, an order was entered July 27 remanding relators to the Sheriff of Jefferson County, and this opinion is filed to disclose grounds on which that order was based.

Opinion filed October 12, 1955.

MR. JUSTICE SMITH dissenting.

In this original habeas corpus proceeding we granted the writ and released the relators, Charles V. and Victor J. LaRocca, on bail from the custody of the Sheriff of Jefferson County, Texas, in view of doubts as to whether their commitment for constructive contempt of the District Court of that County was sustained by any evidence. Briefs have been submitted and oral argument has been heard.

I respectfully dissent from the opinion of the majority. I am firmly convinced that the adjudication of contempt is void because there was no evidence of probative force introduced at the hearing to sustain the charge of contempt. It is the duty of this Court to review the evidence, and if it shows, as a matter of law,—i.e., conclusively establishes—that the contempt charge is not sustained, it naturally follows that the adjudication is void and the relators should be released from custody. Ex Parte H. G. White, 154 Texas 126, 274 S.W. 2d 542; Ex Parte Helms, 152 Texas 480, 259 S.W. 2d 184.

On January 30, 1952 the Howard-Reed Oil Company, Inc. and relator, Charles V. LaRocca, entered into a contract whereby the former purchased from the latter all of his right, title and interest and claim in and to that certain business known as "Charles V. LaRocca Distributing Company." The contract contained an agreement not to engage in the same character of business in the following language: "And I, the said Charles V. LaRocca, hereby bind and obligate myself as a part of the consideration hereof, not to engage in the character of business in which I am now engaged in Jefferson County, Texas, for a

period of five (5) years from the 1st day of February, 1952, either by establishing a new business or a department of an existing business or in any other manner whether directly or indirectly." On the same date the relator executed a written lease agreement with Howard-Reed Oil Company, Inc. by the terms of which he leased to said Company certain real estate in Beaumont, Texas, together with a building situated thereon, and also "five 6000 gal. underground tanks and two 2" 15' hoses with two 2" nozzles." The lease was for a period of five years, beginning February 1, 1952, and ending January 1, 1957. The premises were to be occupied as a wholesale gasoline and oil distributing plant and not otherwise, and the consideration was the sum of $9,000.00, payable in monthly instalments of $150.00 each.

The relator, Victor J. LaRocca, was not a party to any of these instruments; in fact, he had had no contractual relationship with either the relator, Charles V. La Rocca or the Howard-Reed Oil Company, Inc., so far as this matter was concerned until about June 9, 1954. Howard-Reed operated the "bulk plant" for a few months and then closed it and moved to a new location.

In February, 1954, Howard-Reed and Charles V. LaRocca entered into an agreement by the terms of which Charles accepted $2,550.00 cash for the release and cancellation of the lease and the obligation of Howard-Reed to pay the balance of $5,100.00 then due and owing under the terms of said lease. On May 1, 1954, Charles entered into a contract with the Ada Oil Company to distribute the petroleum products of the Phillips Petroleum Company in Beaumont, and he began selling Phillips products on May 2, 1954. On May 12, 1954, Howard-Reed filed suit against Charles alleging a violation of the covenant not to engage in the same character of busines and prayed for an injunction. The defendant, by way of answer, alleged that since Howard-Reed had surrendered the premises, it no longer was operating the business and the restrictive covenant ceased to be effective, and on appeal from an order granting the injunction, presented two points of error, as follows:

"First Point of Error

" 'The restrictive covenant "Not to engage in the character of Business in which I am now Engaged in Jefferson County, Texas," for a period of five years, contained in Plaintiff's Bill of Sale to Defendant, Covering a Business And Its Goodwill, Located at 855 Crockett Street, Beaumont, Texas, Ceased to be

Effective After Defendant Surrendered Said Premises to Plaintiff; and the Trial Court Erred in Enforcing Said Restrictive Covenant by Temporary Injunction.'

"Second Point of Error.

" 'The Trial Court Erred in Construing the Restrictive Covenant, "Not to Engage in the Character of Business in which I am Now Engaged in Jefferson County, Texas" to Include the Wholesale Distribution of all Brands of Petroleum Products." LaRocca v. Howard-Reed Oil Company, Inc., Texas Civ. App., 277 S.W. 2d 769, 772."

I point this out for the reason that Howard-Reed seems to contend that the appeal was a part of a scheme to get around the effect of the injunction. The injunction was entered on June 7, 1954, and Charles was "temporarily enjoined and restrained from in any manner, whether directly or indirectly, engaging in the business of distributing at wholesale gasoline and lubricating oils within the limits of Jefferson County, Texas * * *" On June 9, 1954, and before the defendant, Charles, had perfected his appeal from the order granting the injunction, and at a time when Charles was the legal owner of the premises involved, and further at a time when no injunction had been granted which would have the legal effect of preventing a lease of the premises, Charles entered into negotiations with his brother, Victor, which culminated in the execution of a lease covering said property on June 10, 1954, the term of the lease being for two years, seven months and 16 days, which was the remainder of the five year term granted in the original lease between Charles and Howard-Reed.

On May 10, 1955, Howard-Reed filed its First Amended Original Petition making Victor a party to the original suit filed on May 12, 1954, and on June 13, 1955, a Second Amended Original Petition was filed alleging, in part, that the transaction between Charles and Victor was "colorable, fraudulent, and simulated, for the sole purpose of thwarting the order of this court and enabling the said Charles to engage in business notwithstanding the injunction previously issued * * *; that the said Victor is in truth and in fact only the alter ego and successor of the said Charles, and an agent, servant and employee of the said Charles."

It is generally recognized that whether contempt proceedings grow out of civil or criminal proceedings, they are somewhat criminal in nature and the procedure therein should there-

fore conform as nearly as practicable to criminal procedure. Ex Parte Genecov, 143 Texas 476, 186 S.W. 2d 225, 160 A.L.R. 1099; Ex Parte Scott, 133 Texas 1, 123 S.W. 2d 306, 126 S.W. 2d 626. The relators in this case are presumed to be innocent of violating the injunction of June 7, 1954, and the burden was upon respondent, Howard-Reed to prove, by a preponderance of the evidence that the lease of the property and sale of the stock of oil and other merchandise was a simulated and fraudulent transaction to permit Charles to engage in the same character of business notwithstanding the injunction.

Respondent contends that the following circumstances establish that the transaction between Charles and Victor was a fraud and a subterfuge: (1) the fact that Charles and Victor are brothers; (2) the fact that Charles leased to Victor his gasoline bulk storage plant and truck; (3) the fact that Charles sold his inventory of gasoline and lubricating oils to his brother, Victor; (4) the fact that Victor borrowed $8,000.00 from the First National Bank; (5) the fact that Charles issued a letter of guaranty of payment of the loan; (6) the fact that Charles appealed from the order granting the temporary injunction; (7) the fact that Victor employed a public accountant to aid and assist him in setting up his business; (8) the fact that Victor agreed to pay $200.00 per month rental for the lease; (9) the fact that the lawyer who had represented Charles in the prior litigation prepared the papers at the request of Charles.

The relator, Charles, admittedly executed the lease to his brother, but the injunction did not and could not enjoin him from leasing his gasoline bulk storage plant and truck to his brother. The relator, Charles, admittedly sold his inventory of gasolines and lubricating oils on hand at his bulk storage plant to his brother, Victor, but again the injunction did not prohibit him from doing so. Neither did the injunction prohibit and enjoin him from acting as a guarantor of his brother's note at the bank. It is true that relator, Charles, perfected an appeal to the Court of Civil Appeals from the order granting the injunction. Due process of law guaranteed him this valuable right and Charles cannot be charged with fraud and subterfuge and bad faith merely because he executed his right and privilege under the Constitution and laws of the State in which he resides.

Respondent, Howard-Reed, contends that the above circumstances prove that the transaction between the two brothers

was fraudulent and a subterfuge for the express purpose of evading the injunction and that such facts prove that the brothers fraudulently entered into a simulated transaction in order to permit Charles to remain in the same character of business and thereby it has suffered damages, both actual and examplary.

It is my contention that the facts relied upon by respondent amount to no more than a mere suspicion and the circumstances relied upon by respondent were entirely lacking in probative force to establish the ultimate fact; i.e., that the relators were guilty of a fraud and subterfuge and therefore of a constructive contempt. No safe conclusion can be deduced from circumstantial evidence if it be left reasonable to suppose that the circumstances themselves are not proven. Wroth v. Norton, 33 Texas 192; Kansas City Southern Ry. Co. v. Carter, Texas Civ. App., 166 S.W. 115, no writ history; Texas Pacific Coal & Oil Co. v. Wells, 151 S.W. 927, affirmed, 140 Texas 2, 164 S.W. 2d 660; Aetna Ins. Co. v. English, Texas Civ. App., 204 S.W. 2d 850, no writ history; Wright v. Dabbs, 220 S.W. 2d 681, wr. ref., n.r.e.; Perren v. Baker Hotel of Dallas, Texas Civ. App., 228 S.W. 2d 311, 317, no writ history.

I think the following quotation from the case of Perren v. Baker Hotel of Dallas, supra, demonstrates that there is no evidence to sustain the court's judgment of contempt.

"* * * We think the circumstances in evidence in this case are equally as consistent with the contention that no lifetime lease contract was made as they are with the contention that such a contract was made. *Where circumstances are equally consistent with the existence and nonexistence of an ultimate fact sought to be established, such circumstances are wanting in probative force as any evidence tending to establish the existence of the ultimate fact.* 17 T. J. p. 909, Sec. 409; Kansas City Southern R. Co. v. Carter, Texas Civ. App., 166 S.W. 115; Stewart v. Miller, Texas Civ. App., 271 S.W. 311 (er. ref.); Green v. Texas & P. Ry. Co., 125 Texas 168, 81 S.W. 2d 669; Aetna Ins. Co. v. English, Texas Civ. App., 204 S.W. 2d 850." (Emphasis added)

As is said in Aetna Ins. Co. v. English, supra:

"The accepted rule applicable to circumstantial evidence is set out in 17 Texas Jurisprudence 908, Section 409, in this language: 'To establish a fact by circumstantial evidence, the circumstances relied on must have probative force sufficient to

constitute the basis of a legal inference; it is not enough that they raise a mere surmise or suspicion of the existence of the fact or permit of a purely speculative conclusion. The circumstances relied on must be of such a character as to be reasonably satisfactory and convincing, or, as it has been said, sufficient reasonably to produce belief of the existence of the fact which is sought to be shown by them. At all events they must not be equally consistent with the non-existence of the ultimate fact.' "

I contend that the facts relied upon by respondent not only fail to establish the ultimate fact sought to be proved, but also such circumstances amount in law to no evidence and, therefore, do not sustain relator's commitment for contempt. The evidence in this case conclusively shows that Charles obeyed the injunction of June 7, 1954 by first securing a cancellation of his contract with the Ada Oil Company and then entering into negotiations with his brother which resulted in a bona fide lease of the premises and a sale of the oil and gasoline supplies for a valuable consideration. A representative of the bank testified to facts which reveal that there was nothing secretive about the transaction. Victor signed a note for $8,000.00. The bank did not refuse the extension of credit to Victor. When asked about this, he stated that the policy of the bank was to require a financial statement, and that he could not say that he would not extend credit to Victor. The bank knew Charles and agreed to accept his letter of guaranty in lieu of securing a financial statement from Victor. Victor executed the note and has reduced the indebtedness to the bank to approximately $5,000.00. He has met his monthly lease payments of $200.00, which sum, taking into consideration the fact that an oil truck was leased in addition to the property involved in the lease agreement with Howard-Reed, was not in excess of the lease payments provided for in that lease. The representative of the bank testified that after the loan had been made, the attorney for respondent approached him during business hours in the bank and made inquiry as to the loan. True to business requirements and in order not to reveal transactions between the bank and its clients, the bank desired approval of Victor or his attorney. Pursuant to such ethical requirements, the bank called the attorney for Victor and that attorney readily informed the bank that it was at liberty to disclose the entire transaction to the respondent to the extent of giving to the respondent a photostat of all instruments which had been executed in connection with the loan. The bank then proceeded to comply with the privilege granted. There was no delay. The attorney secured all the information he de-

sired the very day he had made the request. The proof shows conclusively that Charles has not operated the business since the injunction was granted on June 7, 1954. The mere lending of money or the act of guaranteeing the payment of Victor's note did not amount to a breach of the covenant of Charles not to engage in the business of operating the wholesale distributing plant, or the bulk sales plant, as it is sometimes referred to in the record. Battershell v. Bauer (1900) 91 Ill. App. 181; Gallup Elec. Light Co. v. Pacific Improv. Co. (1911) 16 N. M. 86, 113 P. 848; Reeves v. Sprague (1894) 114 N. C. 647, 19 S. E. 707; Finch Bros. v. Michael (1914) 167 N. C. 322, 83 S.E. 458, L.R.A. 1915 B, 1204; Sineath v. Katzis (1941) 218 N.C. 740, 12 S.E. 2d 671; Harkinson's Appeal (1875) 78 Pa. 196, 21 Am. Rep. 9; General Bronze Corp. v. Schmeling (1933) 213 Wisc. 150, 250 N.W. 412, 93 A.L.R. 114, 36 Am. Jur. 550, Sec. 73; Salzman v. Siegelman, 102 App. Div. 406, 92 N.Y.S. 844; Owen v. Willis, Texas Civ. App., 20 S.W. 2d 338, wr. dism. The relator, Charles, had the legal right to lease the property which had been surrendered to his possession by Howard-Reed, and the transaction bewteen the brothers was not prohibited by the injunction.

Respondent cites Rule 683, Texas Rules of Civil Procedure, in support of its contention that the temporary injunction is binding upon the relators. Relator, Victor, was not a party to the suit when the injunction was granted. The only connection he had was to lease and purchase the property involved from his brother, Charles. The evidence in this case conclusively shows that Victor acquired the lease and property for himself alone and that he was not acting as the agent, servant, employee or attorney for Charles. Victor not only acquired the property, but he also entered into a binding legal agreement and placed himself under obligation to pay the note executed in favor of the bank, and the note in favor of his brother, Charles. When Victor acquired the lease and property and entered into the operation of the business he was entitled to the profits, if any, to be derived as the result of ownership, and his only duty was to meet his payments. This he has done. Charles had not in any manner had any connection with the business since June 7, 1954.

The order for, and the writ of injunction cannot be extended by construction beyond its terms. To do so in this case would deprive the parties of due process. Charles would be compelled to allow his property to remain unused and of no value to him until January 1, 1957. In the meantime the tanks would con-

tinue to rust and the property would deteriorate as the record shows occurred during the time the original lease between Charles and respondent was in effect and until they were renovated and the building was repaired by Charles after the surrender of the leased premises. Or he would be compelled to lease and sell to some other party who was not related by blood or consanguinity. Respondent admitted in oral argument that Charles had the right to deal with "some one sitting in this courtroom," but not to his brother.

The only point in this case is whether or not the relators contemptuously disobeyed the order of June 7, 1954, by entering into the agreement on June 10, 1954, by the terms of which Victor leased the property and purchased the gasoline and oil supplies in the manner set out above.

Respondent cites the case of Rodman v. Rogers, 109 F. 2d 520 (sixth Circuit) wherein it was held that "when one succeeds to the interest of another against whom an injunction has issued and has knowledge of the terms of the injunction, he is as much bound by it as was the other against whom it was issued."

This well recognized rule has no application here, because the act of the relators in consummating the deal on June 10, 1954 was not prohibited by the terms of the injunction of June 7, 1954. This case has not been tried on its merits. The injunction order contains the following: "Provided, however, that should there be no trial upon the merits of this cause prior to January 31, 1957, the restrain herein ordered (against Charles) shall cease and terminate."

Respondent by its first and second amended original petitions, in lieu of praying for an injunction, and in the alternative for a declaratory judgment establishing and declaring that the agreement not to compete contained in said contract was valid and binding, as in its original petition, alleged a cause of action for damages against both relators, and prayed that both be held in contempt for violating the terms of the injunction of June 7, 1954. Respondent further alleged in its second amended original petition the facts showing the lease and sale from Charles to Victor, and further alleged that "the said Charles, in violation of his restrictive covenant, did distribute gasoline and oil in Jefferson County, Texas, until restrained by this Court's order; that immediately after the granting of said in-

junction, he conceived the scheme and device of continuing the business through the agency of his brother * * *."

This issue has not been tried except by way of contempt proceedings. It seems to me that the respondent is asking this Court to go beyond its power and by judicial decree without a trial, sanction and lend its aid to the unauthorized act of respondent in attempting to adjudicate the rights of the parties by contempt rather than by a trial of the rights of the parties as reflected by the pleadings.

It is significant that respondent did not pray for a temporary injunction based on its pleadings in its Second Amended Original Petition as it did in its original petition, but asked that upon final hearing the temporary injunction of June 7, 1954 be made permanent.

Respondent has elected to stand upon the original injunction rather than to try the issues raised by the pleadings in its last petition. Since there is no evidence to sustain relator's commitment for contempt, and since the respondent relies solely on the acts of the relator after June 7, 1954, which do not, as a matter of law, show a violation of said order, I conclude that the relators should be discharged from custody.

Opinion delivered October 12, 1955.